RADIO–TELEVISION NEWS DI-
RECTORS ASSOCIATION and Na-
tional Association of Broadcasters,
Petitioners,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

Office of Communication, Inc., of
the United Church of Christ,
et al., Intervenors.

Nos. 98–1305 & 98–1334.

United States Court of Appeals,
District of Columbia Circuit.

Filed Oct. 11, 2000.

Before: EDWARDS, Chief Judge and
ROGERS, Circuit Judge.[1]

Opinion for the Court filed by Circuit
Judge ROGERS.

ROGERS, Circuit Judge:

The court is presently asked to order
the vacation of the personal attack and
political editorial rules adopted by the
Federal Communications Commission in
1967 as corollaries to the fairness doctrine,
which the Commission abandoned in 1985.[2]
*See Motion to Recall the Mandate or For
an Order Pursuant to 47 U.S.C. § 402(h),
or a Writ of Mandamus to Compel Agency
Action,* filed July 6, 2000 (*"Motion for
Mandamus"*). In deference to the Com-
mission's response in opposition, the court
held in abeyance consideration of the *Mo-
tion for Mandamus* until September 29,
2000, instructing that if the Commission
had not acted by that date, petitioners
could supplement their request and seek
appropriate action from the court. On
October 2, 2000, petitioners filed an *Emer-
gency Motion, Supplement to Motion to
Recall Mandate or For an Order Pursu-
ant to 47 U.S.C. § 402(h) or a Writ of*

---

**1.** Judge Wald was originally a member of the panel.

**2.** *See* 47 C.F.R. §§ 73.1920, 73.1930, 76.209(b)-(d)(1999).

Mandamus to Compel Agency Action ("*Emergency Motion*").

The court has previously recounted the chronology of events, now exceeding twenty years when in response to a 1980 petition to vacate the rules, nothing happened for long periods of time. *See Radio–Television News Dirs. Ass'n v. FCC*, 184 F.3d 872 (D.C.Cir.1999) ("*1999 Radio–Television*"). The court did, however, acknowledge that the rules "interfere with editorial judgment of professional journalists and entangle the government in day-to-day operations of the media," *id.* at 881, and "chill at least some speech, and impose at least some burdens on activities at the heart of the First Amendment." *Id.* at 887. Consequently, the court held that it was incumbent upon the Commission to "explain why the public interest would benefit from rules that raise these policy and constitutional doubts." *Id.* at 882.

In December 1999, following the denial of rehearing and rehearing en banc, the court remanded the case to the Commission, stating that the Joint Statement by the two Commissioners in support of the rules was inadequate to permit judicial review. *Id.* at 881–85. The court instructed the Commission's two-member majority to explain its support of the personal attack and political editorial rules in light of the Commission's conclusion in 1985 that the fairness doctrine was not in the public interest and its decision in 1987 not to enforce the fairness doctrine. *Id.* at 889. The court also stated that given prior delay, the Commission must act expeditiously on remand. *Id.* at 889. In so doing, however, the court did not doubt its authority to grant relief. *Id.* at 888. Although the Commission advised in response to the petition for rehearing and rehearing in banc, filed September 28, 1999, that a prompt decision by it was needed and that it could commence a new proceeding, *see Response to Petition for Rehearing and Rehearing En Banc* at 6, and also sought additional time to act in opposing the pending motion, *see FCC Response to Motion for Mandamus*, filed July 18, 2000, at 3, as of September 29, 2000, the Commission had failed to advise the court that it had acted, much less commenced a proceeding and petitioners represented that no such action has been taken. *See Emergency Motion* at 16. Consequently, the two rules continued to exist in a vacuum, unsupported by reasoning that would demonstrate to the court that they are in the public interest notwithstanding some interference with and some burdens on speech.

On October 4, 2000, the Commission responded to the *Emergency Motion* advising that on that date the Commission, over two dissents, had issued an *Order* temporarily suspending the rules for 60 days, effective immediately. *See Order and Request to Update Record*, 2000 WL 1468707 ¶ 1 ("*Order*").[3] In the *Order*, the Commission requested broadcasters and others to report on their actions during the suspension period and to provide, within sixty days after the reinstatement of the rules on December 3, 2000, evidence to assist the Commission in reviewing the rules and in responding to the court's opinion. *See id.* ¶ ¶ 8–13. In view of its *Order*, the Commission contends that the motion for mandamus is now moot. *See Response to Emergency Motion* at 1. The matter is not so simple, however.

Neither the timing nor the substance of the *Order* responds to the court's remand order in *19§99 Radio–Television*. From the silence of the Commission until October 4, 2000, and the statements of the two dissenting Commissioners, it can reasonably be inferred that until the court's order of July 24, 2000, responding to the *Motion for Mandamus*, the Commission had taken no action to respond to the remand.[4] Consistent with the decision of

---

3. Commissioners Harold W. Furchtgott–Roth and Michael K. Powell dissented and issued separate statements. *See Order*, 2000 WL 1468707.

4. Commissioner Furchtgott–Roth states that he was not approached about acting on the matter until early September 2000. *See* Sepa-

the court, the two Commissioners supporting the rules could have submitted a new justification with or without new data, or the Commission could have commenced a new proceeding to gather such data. The separate statement of Commissioner Powell indicates that the deadlock might not have persisted had some intermediary steps been proposed.[5] On this record, the court can only conclude that its remand order for expeditious action was ignored.[6]

■ Be that as it may, the court is now confronted with the October 4th *Order.* Clearly, the *Order* is not responsive to the court's remand. The Commission still has not provided adequate justification for the rules, and in its *Order* provides no assurance that it will do so. The suspension of the rules for 60 days simply has the effect of further postponing a final decision by the Commission. Incredibly, the Order reinstates the rules before the Commission will have received any of the updated information that the Commission states it requires in order to evaluate the rules. *See Order* ¶ 7. Thus, notwithstanding the Commission's continuing failure to provide adequate justification, as of December 3, 2000, petitioners would again be subject to the rules that they have contended since 1980 have serious consequences and that the court has acknowledged have some effect on speech and cause some interfer-

ence with broadcasters' editorial judgments. The *Order* provides no assurance whatsoever that the Commission will proceed expeditiously once it receives the requested information. It follows that petitioners' *Motion for Mandamus* is not moot. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Delta Air Lines, Inc. v. CAB,* 674 F.2d 1, 4 (D.C.Cir.1982).

In other words, it is folly to suppose that the 60–day suspension and call to update the record cures anything. As petitioners point out in their *Reply to the FCC Response to the Emergency Motion,* the Commission updated the record four years ago and still did not provide an adequate justification for the rules. *See id.* at 2. Apparently the Commission views the presidential election period as a particularly good opportunity to gauge the effect of the rules. *See Order* ¶ 7. The rules, once reinstated, will be effective year-round. Pretermitting whether the requirement of the First Amendment suggested by the *Order* is skewed,[7] not only does the *Order* provide short notice for broadcasters to change their plans, but their conduct will in any event be affected by the fact that the rules will be reinstated on December 3, 2000. In short, the October 4th *Order* compounds the problems, affording no relief to petitioners and no assurance that

---

rate Statement of Commissioner Furchtgott–Roth, *Order,* 2000 WL 1468707. Similarly, Commissioner Powell states that no one proposed a new proceeding to him in the months since the court's remand. *See* Separate Statement of Commissioner Powell, *Order,* 2000 WL 1468707. Chairman Kennard's announcement that he would no longer recuse himself from "participat[ing] in the proceeding" did not occur until September 18, 2000. *See Statement of FCC Chairman William E. Kennard Concerning his Participation in the Personal Attack and Political Editorial Rule Proceeding* (September 18, 2000) <http://www.fcc.gov/Speeches/Kennard/Statements/2000/stwek075.html>.

5. *See* Separate Statement of Commissioner Powell, *Order,* 2000 WL 1468707.

6. *See also* § 402(h), which provides:

   In the event that the court shall render a decision and enter an order reversing the order of the Commission, it shall remand the case to the Commission to carry out the judgment of the court and it shall be the duty of the Commission, in the absence of the proceedings to review such judgment, to *forthwith give effect thereto,* and unless otherwise ordered by the court, to do so upon the basis of the proceedings already had and the record upon which said appeal was heard and determined.

   47 U.S.C.A. § 402(h)(West 1991)(emphasis added).

7. *See* Separate Statement of Commissioner Furchtgott–Roth, *Order,* 2000 WL 1468707; Separate Statement of Commissioner Powell. *Id.*

final action is imminent, much less to be expeditiously accomplished. The petition to vacate the rules has been pending since 1980, and less stalwart petitioners might have abandoned their effort to obtain relief long ago. If these circumstances do not constitute agency action unreasonably delayed, *see Telecommunications Research and Action Ctr. v. FCC,* 750 F.2d 70, 79–81 (D.C.Cir.1984), it is difficult to imagine circumstances that would.

■ In these extraordinary circumstances, the court's decision is preordained and the mandamus will issue. *Cf. Calderon v. Thompson,* 523 U.S. 538, 550, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). The court has afforded repeated opportunities for the Commission to take final action. Despite its filings suggesting to the court that something would happen, the Commission, once again, has done nothing to cure the deficiencies of which it has been long aware. Of course, the Commission may institute a new rule-making proceeding to determine whether, consistent with constitutional constraints, the public interest requires the personal attack and political editorial rules. These are issues that the court has yet to decide. Nevertheless, extraordinary action by the court is warranted in this case, particularly in view of the fact that the six reasons proffered in support of the rules were all wanting. *See 1999 Radio–Television,* 184 F.3d at 881–85. The Commission has delayed final action for two decades, to the detriment of petitioners. While it acknowledged the need for a prompt decision, the Commission failed to act for nine months. Finally, its response consists of an order that further postpones a final decision without any assurance of a final decision.

Accordingly, the court hereby recalls its mandate and issues a writ of mandamus directing the Commission immediately to repeal the personal attack and political editorial rules.