Katie G. MATTHEWS, as Guardian and Next Friend of LaChrisia Lorraine Matthews, Appellant.

v.

DISTRICT OF COLUMBIA,

and

Angela Barrett, as Guardian and Next Friend of Nicholas Matthews, Appellees.

No. 02–CV–38.

District of Columbia Court of Appeals.

Argued April 9, 2003.

Decided June 2, 2005.

Walter E. Laake, Jr., Greenbelt, MD, for appellant, Katie G. Matthews, as Guardian and Next Friend of LaChrisia Lorraine Matthews.

Sheila Kaplan, Assistant Attorney General, with whom Arabella W. Teal, Interim Attorney General at the time the brief was filed, and Charles L. Reischel, Deputy Attorney General at the time the brief was filed, were on the brief for appellee, the District of Columbia.*

Harold L. Levi, Washington, for appellee, Angela Barrett, as Guardian and Next Friend of Nicholas Matthews.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

RUIZ, Associate Judge:

This is an appeal from the trial court's dismissal of the appellant's complaint, filed

---

\* At the time the briefs were filed, Ms. Kaplan, Ms. Teal, and Mr. Reischel were called Assistant Corporation Counsel, Interim Corporation Counsel, and Deputy Corporation Counsel, respectively. Since that time, however, the Mayor of the District of Columbia has issued an executive order re-designating the Office of Corporation Counsel as the Office of the Attorney General for the District of Columbia. *See* Mayoral Order No. 2004–92, 51 D.C. Reg. 6052 (May 26, 2004) (citing D.C.Code § 1–204.22(2) & (11) (2001)). We therefore employ the titles applicable at the time of this opinion's publication.

at the request of the Police and Firefighters' Retirement and Relief Board ("Board"), for a declaration of her child's paternity that would enable the Board to determine the child's entitlement to survivor benefits resulting from the death of her putative father, a firefighter. We disagree with the trial court's determination that it lacked jurisdiction on the ground that the issue was properly for the Board's determination. We therefore reverse and remand so the trial court can decide the question of paternity.

## I.

The appellant, Katie G. Matthews, and Louis J. Matthews, a D.C. firefighter since May of 1992, were married on January 24, 1992.[1] While they were married, Mr. Matthews and appellant filed an Acknowledgment of Parentage form, in which Mr. Matthews acknowledged that he was the father of LaChrisia Lorraine Matthews, the minor child born to the appellant prior to the marriage. According to the appellant, after their divorce in 1997, Mr. Matthews continued to acknowledge LaChrisia as his child, even after the birth of Nicholas Matthews, the son of Mr. Matthews and the appellee, Angela Barrett.

On May 31, 1999, Mr. Matthews died in the line of duty. The appellant filed an application for survivor benefits on behalf of LaChrisia with the Board.[2] She also filed applications for Social Security Survivor Benefits, the Government of the District of Columbia Office of Pay and Retirement Services Employee Life Insurance Survivor Benefits, and the Department of

---

1. The appellant claims that she and Mr. Matthews had been dating and living together for several years prior to the marriage. They were married for five years.

2. Pursuant to D.C.Code § 5–716 (2001) (formerly D.C.Code § 4–622 (1981)), minor surviving children of a firefighter killed while on duty are entitled to receive certain survivor benefits, including an annuity and a lump sum payment. The statute provides in relevant part:

   (a) If any member: (1) dies in the performance of duty and the Mayor determines that: (A) the member's death was the sole and direct result of a personal injury sustained while performing such duty; (B) his death was not caused by his willful misconduct or by his intention to bring about his own death; and (C) intoxication of the member was not the proximate cause of his death; and (2) is survived by a survivor, parent, or sibling, a lump-sum payment of $ 50,000 shall be made to his survivor if the survivor received more than one half of his support from such member, or if such member is not survived by any survivor (including a survivor who did not receive more than one half of his support from such member), to his parent or sibling if the parent or sibling received more than one

   half of his support from such member. If such member is survived by more than 1 survivor entitled to receive such payment, each such survivor shall be entitled to receive an equal share of such payment; or if such member leaves no survivor and more than 1 parent or sibling who is entitled to receive such payment, each such parent or sibling shall be entitled to receive an equal share of such payment.

   . . . .

   (c) Each surviving child or student child of any member who dies before retirement, of any former member who dies after retirement, or of any member entitled to receive an annuity under § 5–717 (regardless of whether such member is receiving such annuity at the time of death), shall be entitled to receive an annuity equal to the smallest of:

   . . . .

   (2) In the case of a member or former member who is not survived by a wife or husband:

   . . . .

   (C) In the case of a member who was an officer or member of the Metropolitan Police force or the Fire Department of the District of Columbia, 75% of the adjusted average pay of the former member, divided by the number of eligible children.

   D.C.Code § 5–716.

Justice Police and Safety Officers' Benefits Program.[3]

After an evidentiary hearing, the Board denied LaChrisia's application for survivor benefits because it was unable to determine that LaChrisia was the child of the deceased firefighter, within the meaning of D.C.Code § 5–701(5)(A) (2001) (formerly D.C.Code § 4–607(5)(A) (1981)).[4] The Board directed LaChrisia to "obtain a declaratory judgment from the Courts of the District of Columbia," to determine whether Mr. Matthews was her father. The Board further indicated that its order was without prejudice and, once a declaratory judgment establishing paternity was issued, the appellant could "seek further relief in this cause based on the declaratory judgment." Following the Board's recommendation, the appellant, as Guardian and Next Friend of LaChrisia Lorraine Matthews, filed a complaint for a judgment declaring that LaChrisia is the minor child of deceased firefighter Louis J. Matthews. Arguing that under D.C.Code § 16–909, the Acknowledgment of Parentage form that was signed, under oath, by her and Mr. Matthews, "is conclusive evidence that [Mr. Matthews] is the father of LaChrisia Matthews for all rights, privileges, duties, and obligations under the laws of the District of Columbia," appellant subsequently filed a motion for summary declaratory judgment on the issue of paternity. The motion was opposed by both the District of Columbia and Angela Barrett, as Guardian and Next Friend of Nicholas Matthews, the child of Ms. Barrett and the deceased Mr. Matthews.[5]

After hearing oral argument, the trial court denied the appellant's motion for summary declaratory judgment and dismissed the complaint. The trial court agreed with the District of Columbia that the court plays a limited role in respect of proceedings before the Board, which is the entity entrusted by the Mayor with the statutory responsibility to consider the allocation of survivor benefits. The trial court further determined that it may only "overturn the Board's decision if its findings are unsupported by substantial evidence in the record as a whole, or if it is grounded on faulty legal premises." The court thus considered that it was constrained to dismiss appellant's complaint—even if filed at the Board's instance—be-

3. According to appellant, both the Social Security Agency and the D.C. Office of Pay and *Retirement Services determined that LaChrisia was entitled to receive survivor benefits. Additionally, $42,000 was contributed to the family of Louis Matthews by charitable donation, half of which has already been given to LaChrisia. However, the Department of Justice Police and Safety Officers' Benefits Program, as of the time of argument, refused appellant's claim and had stayed any decision on the application until the issue of paternity is resolved.

4. The term "child" means an unmarried child, including:
    (i) An adopted child; and
    (ii) A stepchild or recognized natural child who lives with the member in a regular parent-child relationship, under the age of 18 years; or

    (iii) Such unmarried child regardless of age who, because of physical or mental disability incurred before the age of 18, is incapable of self-support.
D.C.Code 5–701(5)(A) (2001).

5. The appellant also filed a motion to supplement the record in this proceeding with a memorandum of law filed by the District of Columbia in the case of *T.B. v. J.R.W.,* D.C.Super. Ct. Docket No. PS–1609–93p (Sept. 7, 1995), in which the appellant claims that the District of Columbia took a position contrary to that argued in this case, specifically, that an acknowledgment of parentage form made pursuant to D.C.Code § 16–909.01 *created a conclusive presumption of paternity* that could only be challenged on the grounds of fraud, duress or material mistake of fact. The trial court denied the motion to supplement.

cause the factual dispute at issue is by statute for resolution by the Board. Appellant filed this timely appeal.[6]

## II.

■ This court reviews the trial court's legal conclusions *de novo*, but factual findings are treated as "presumptively correct unless they are clearly erroneous or unsupported by the record." *Lawlor v. District of Columbia*, 758 A.2d 964, 974 (D.C. 2000) (quoting *Auxier v. Kraisel*, 466 A.2d 416, 418 (D.C.1983)). The trial court based its dismissal of the appellant's claim on the doctrine of primary jurisdiction, noting that the "determination of parentage, an issue of fact or, at most, a mixed issue of fact and law, has by statute been conferred upon the Police and Firefighters' Retirement and Relief Board," and further noting that "the legal standard for the Board's evaluating a challenge to filiation assertedly established by statutorily prescribed means has also been set forth by statute." As this is an issue of law, we review the matter *de novo*.

The appellant argues that the trial court is the appropriate forum to resolve the question of paternity, pursuant to its authority under *In re D.M.*, 562 A.2d 618, 620–21 (D.C.1989), an issue that is relevant not only to the Board's determination but also to benefits from other sources. See *supra*, note 3. She contends that the court's determination of paternity would not supplant the Board's ultimate authority to decide whether to award survivor benefits under D.C.Code § 5–716, noting that the Board itself directed the appellant to seek a threshold determination regarding paternity from the court so that the

Board may then finally resolve the question of survivor benefits.

Appellee Barrett does not contest the Superior Court's authority to render declaratory judgments to establish paternity. Rather, she argues that the Board, and not the courts, must make a determination of parentage in connection with a benefits determination entrusted to the Board. In support of the trial court's determination that the Board has primary jurisdiction to determine paternity in this case, appellee Barrett notes that the Board held an evidentiary hearing to that end and is competent to make such a determination. On the merits of the paternity question, appellee Barrett asserts that LaChrisia is not the child of Louis Matthews, leaving only her child, Nicholas, entitled to survivor benefits.

■ The District of Columbia has taken the position, both in the trial court and in this court, that it has no interest in who receives the survivor benefits, so long as they are paid in accordance to the law. From that posture, it contends that, because in this instance the court's jurisdiction was invoked only for purposes of determining eligibility for survivor benefits resulting from Mr. Matthews's death in the line of duty as a firefighter, it is the Board alone which must make a determination as to whether benefits should be awarded. The District distinguishes this court's ruling in *In re D.M.*, cited by appellant, as standing for the proposition that the Superior Court may issue declaratory judgments regarding paternity so long as there is a justiciable claim, but without addressing the question of primary jurisdiction presented in this case. On this point, we agree with the District of

---

**6.** While a petition for review of final administrative action, pursuant to D.C.Code § 2–510(1) (2001), may be taken to the District of Columbia Court of Appeals, this appeal is

from the trial court's dismissal of the complaint for declaratory judgment, not a petition for review of the Board's decision.

Columbia. In determining whether an action seeking a declaratory judgment regarding paternity is justiciable or whether it would be an "abstract, hypothetical or contingent question" over which the trial court would lack jurisdiction, *In re D.M.*, 562 A.2d at 620 (quoting *Pauling v. Eastland*, 109 U.S.App.D.C. 342, 344, 288 F.2d 126, 128 (1960)), some reason must be stated to render the judicial determination more than a mere advisory opinion. *See id.* (quoting *Smith v. Smith*, 310 A.2d 229, 231 (D.C.1973) (holding that appellant did not have a justiciable claim since she had alleged no reason for seeking the determination that appellee was her natural father)). Alleging entitlement to tangible benefits flowing from parentage would be a justiciable claim. *See id.* In this case, since there are financial benefits at stake, the appellant has presented a justiciable claim. Insofar, however, as the question before us is not one of justiciability, but whether the doctrine of primary jurisdiction precludes the trial court from entering a declaratory judgment regarding the appellant's parentage, this court's holding in *In re D.M.* does not significantly advance appellant's claim in that regard.

■ We have adopted the doctrine of primary jurisdiction, whereby issues in claims that are originally cognizable in the courts may, nonetheless, be referred to an administrative body for resolution when the issue falls within the "special competence" of an agency. *Lawlor*, 758 A.2d at 973 n. 11. Even "where an issue *arguably* falls within the specialized competence of

an agency, the agency should be given an initial opportunity to determine whether or not it has jurisdiction." *Id.* (emphasis added) (citing *Grillo v. District of Columbia*, 731 A.2d 384, 386–87 (D.C.1999)). Benefits and annuities are distributed to the surviving children of injured or deceased firefighters pursuant to D.C.Code § 5–716. See *supra*, note 2. The Board has been designated by the Mayor as the entity to consider all applications for firefighter benefits, *see* D.C.Code §§ 5–721, –722 (2001), pursuant to the Board's rules of practice and procedure. *See* 7 DCMR § 2500, *et seq.* (2001). Specifically, the Board is vested with the power to make findings of fact and conclusions of law in furtherance of its general power to determine eligibility for benefits and annuities. *See* 7 DCMR § 2523 (2001).

Under the law of the District of Columbia, "[a] child's relationship to its father is established by proving by a preponderance of the evidence that he is the father...." D.C.Code § 16–909(a). Relevant to this case, a presumption of paternity is raised if the putative father marries the child's mother after the child's birth or acknowledges paternity in writing. *See* D.C.Code §§ 16–909(a)(3) and (4).[7] That presumption may be overcome by clear and convincing proof that the presumed father is not the child's father. *See* D.C.Code § 16–909(b). "The Superior Court shall try the question of paternity and shall determine whether the presumed father is or is not the father of the child." *Id.* Also relevant to this case is that a conclusive presump-

---

7. Section 16–909 reads in relevant part:

(a) .... A child's relationship to its father is established by proving by a preponderance of evidence that he is the father, and there shall be a presumption that he is the father:

....

(3) if, after the child's birth, he and the child's mother marry or attempt to marry,

(with the attempt involving some form of marriage ceremony that has been performed in apparent compliance with law) though such attempted marriage is or might be declared void for any reason, and he has acknowledged the child to be his; or

(4) if the putative father has acknowledged paternity in writing.

D.C.Code § 16–909(a)(3) & (4) (2001).

tion of paternity is established if the written acknowledgment is in the form provided in § 16–909.01(a)(1) (2004 Supp.).[8] *See* D.C.Code § 16–909(b–1)(2).[9] A conclusive presumption thus established may be "challenged in the Superior Court after the rescission period provided by section 16–909.1(a–1) through the same procedures as are applicable to a final judgment of the Superior Court, but only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenging party." D.C.Code § 16–909(c–1) (2004 Supp.).

The Board, in reviewing the appellant's application for survivor benefits under D.C.Code § 5–716, found itself unable to determine whether LaChrisia was the child of the deceased firefighter within the meaning of D.C.Code § 5–701(5)(A). The Board noted that there were several discrepancies in the record from which contradictory conclusions could be drawn regarding the child's parentage. The birth certificate, which showed Mr. Matthews as the child's natural father, had been visibly altered. The Board noted that while there was evidence that Mr. Matthews signed an Acknowledgment of Parentage form, there was no evidence as to the attendant circumstances, including whether Mr. Matthews was "just trying to help out," and whether he knew the consequences of signing such a form. The Board further noted that while Mr. Matthews attested in the Acknowledgment of Parentage that he was LaChrisia's "actual" father, there was documentary evidence that she was born in 1984, and testimonial evidence that he met the child's mother in 1988, and that he did not meet the child until she was four or five years old. Moreover, the complaint for divorce against appellant filed in Prince George's County, Maryland, stated that the couple had "no children together," and no child support was ordered by the court. In sum, the Board's order suggested that Mr. Matthews may not have been aware of the consequences of signing the form acknowledging paternity—an awareness required for operation of the conclusive presumption of paternity, *see* D.C.Code 16–909.01(a)(1), *supra*, note 8— or worse, that he may have lied or been lied to when he did so. Faced with this record, the Board was of the view that the interests of the deceased firefighter should

8. Section 16–909.01 states in relevant part that

(a) Paternity may be established by:

(1) A written statement of the father and mother signed under oath (which may include signature in the presence of a notary) that acknowledges paternity; provided, that before the parents sign the acknowledgment, both have been given written and oral notice of the alternatives to, legal consequences of, and the rights and responsibilities that arise from signing the acknowledgment. (Oral notice may be given through videotape or audiotape.) The acknowledgment shall include the full name, the social security number, and date of birth of the mother, father, and child, the addresses of the mother and father, the birthplace of the child, an explanation of the legal consequences of the affidavit, a statement indicating that both parents understand their rights, responsibilities, and the alternatives and consequences of signing the affidavit, the place the affidavit was completed, signature lines for the parents, and any other data elements required by federal law. Nothing in this paragraph shall affect the validity of a voluntary acknowledgment of paternity executed before December 23, 1997, or preclude the submission of an acknowledgment of paternity that does not comply with the requirements of this paragraph as evidence of paternity in a judicial or administrative proceeding . . . . D.C.Code § 16–909.01 (2004 Supp.) (formerly D.C.Code § 16–909.01 (2001)).

9. Section 16–909(b–1)(2) provides in relevant part, that "A conclusive presumption of paternity shall be created . . . [i]f the father has acknowledged paternity in writing as provided in section 16–909.01(a)(1)."

be protected, but expressed doubt that the discrepancies it highlighted could be properly adjudicated before the Board. In particular, the Board found itself in the awkward position of "being the advocate for the deceased" firefighter, because it "cannot appoint an attorney ad litem, conservator or other persons to represent" him. The Board also noted that the deceased firefighter's estate was "currently being litigated before the Superior Court." Thus, it determined that the issue of paternity was better suited for determination "by a court of proper jurisdiction." If the court determined that LaChrisia was the child of Mr. Matthews, the Board would then decide if she was a "survivor" within the terms of the benefits and annuities statute, expressly leaving for later resolution whether LaChrisia received more than half her support from Mr. Matthews, a necessary condition for entitlement to survivor benefits. *See* D.C.Code § 5–716(a), *supra,* note 2.

■ Whether the doctrine of primary jurisdiction requires that the court defer exercising its jurisdiction turns on whether the determination of parentage in this case is within the "special competence" of the Board, so that the question should be "referred to that administrative body for resolution." *See Lawlor,* 758 A.2d at 973. We conclude that it does not. Although the Board generally has the authority to make findings of fact, the governing statute does not specifically recognize or confer any specialized competency upon the Board regarding contested determinations of paternity. The court, on the other hand, regularly does so, and is a centralized, competent authority to determine questions of paternity. *See, e.g., In re D.M.,* 562 A.2d at 621 (noting that other jurisdictions have acknowledged that a declaratory judgment by the court is an appropriate method of determining parent-

age since the "rights contingent upon the establishment of paternity are not insubstantial ... [including] financial interests, medical purposes, [and] future interests which may be much more difficult to adjudicate once the financial claim accrues"). The specific question on the merits in this case is whether the statutory conclusive presumption of paternity based on Mr. Matthews' acknowledgment of paternity applies and is to stand under the circumstances presented, and, if not, whether the evidence otherwise supports the claim of paternity by a preponderance of the evidence. The competing facts the Board identified strongly suggested the possibility of fraud in the acknowledgment of paternity—a challenge to the statutory presumption entrusted for resolution to the Superior Court by statute. *See* D.C.Code § 16–909(c–1). The Board recognized the limits of its ability to properly protect the interests of Mr. Matthews, because it lacked the resources that would be available to the court. By referring the question of paternity to the court, the Board did not abrogate its statutory responsibility to decide whether the claimant was entitled to benefits, as it contemplated that, upon the court's determination of paternity, it would revisit the question whether LaChrisia was a "survivor" within the meaning of D.C.Code § 5–716. As noted, the agency is given the initial opportunity to determine whether an issue is within its special competence. *See Lawlor,* 758 A.2d at 973 n. 11 (citing *Grillo,* 731 A.2d at 386–87). Although we do not say that the Board could never be the proper forum to determine paternity in the context of a claim for the survivor benefits it administers, we see no reason to differ from the agency's own determination of its competence in this case.

There is another reason—apart from the Board's estimation of its competence to decide the disputed issue in this case—

which weighs in favor of having the question of paternity settled by the Superior Court. Even though the District correctly points out that the complaint in this case mentioned that a declaration of paternity was being sought in connection with the determination of survivor benefits by the Board (and at the Board's instance), that specific reference merely indicated the particular circumstance that triggered the complaint in this case, and provided the necessary predicate to base standing to seek a declaratory judgment. *See In re D.M.*, 562 A.2d at 620. But, as mentioned, there were benefits from other sources that were also dependent on the determination of parentage. Moreover, we cannot be blind to the fact that, once established, a determination of paternity carries other, less tangible but no less important, benefits and responsibilities involving family, heritage and self-identity. If the court is confined to the role of reviewing an agency's determination for "substantial evidence" on the question of paternity as if it were any other regulatory issue entrusted to that administrative body, judicial review of a decision of great importance affecting matters beyond the scope of the agency's purview will have been significantly curtailed. Our common understanding of the essential nature of the parent-child relationship is such that we do not easily countenance the possibility that a person could be considered a child in one context, but not in another. However, if the question of paternity is decided by an administrative body—particularly one that is uneasy or ill-equipped to make the decision—there is the unwelcome possibility of different determinations of parentage in different fora. *See Oubre v. District of Columbia Dep't of Employment Servs.*, 630 A.2d 699, 703 (D.C.1993) (recognizing exception to application of res judicata and collateral estoppel principles to decisions of administrative proceedings where there has been

"manifest error in the record"). Therefore, unless the governing statute has a unique definition of "child" that is peculiar to a certain regulatory regime and its application is within the agency's special competence, there is every reason to have the determination of parentage issue from a single, authorized source—the court—that can be conclusive on the issue. *See* D.C.Code § 16–909(b) (designating the Superior Court to decide questions of paternity); *Davis v. Davis*, 663 A.2d 499, 501 (D.C.1995) (applying collateral estoppel principles to preclude relitigation of entitlement to DNA testing to disprove paternity).

We therefore reverse the trial court's dismissal and remand for further proceedings in Superior Court to resolve the issue of paternity, preliminary to the Board's determination of eligibility for survivor benefits.

*Reversed and remanded.*