**Roscoe GRANT, Jr., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 04–CV–190.

District of Columbia Court of Appeals.

Argued May 17, 2005.
Decided Oct. 12, 2006.

Before RUIZ and GLICKMAN, Associate Judges, and KING, Senior Judge.

GLICKMAN, Associate Judge:

Appellant Roscoe Grant, Jr., a supervisor in the District of Columbia Office of the Corporation Counsel,[1] was placed on paid administrative leave pending an internal investigation into allegations that he had sexually harassed a subordinate. Before the investigation was completed, Grant filed this action against the District of Columbia in Superior Court, alleging that the decision to place him on leave without notice or a hearing violated his procedural rights under the Comprehensive Merit Personnel Act ("CMPA"), D.C.Code § 1–601.01 *et seq.* (2001), and the Due Process Clause of the Fifth Amendment. The trial judge granted the District's motion to dismiss the action. We affirm.

## I.

Roscoe Grant started working for the District government in 1971 as a Career Service employee,[2] and that was his status in 1999, when he was appointed to the post of Deputy Director of Operations in the Corporation Counsel's Office of Child Support Enforcement. In August 2002, however, while still occupying that post, Grant transferred out of the Career Service and into the Management Supervisory Service.[3] He thereby became an at-will employee who could be terminated on fifteen

Barbara B. Hutchinson, New Carrollton, MD, for appellant.

Edward E. Schwab, Deputy Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, was on the brief, for appellee.

1. This office is now known as the Office of the Attorney General for the District of Columbia.

2. The Career Service includes "all persons appointed to positions in the District government, except persons appointed to positions in the Excepted, Executive, Educational, Management Supervisory, or Legal Service." D.C.Code § 1–608.01(a).

3. The Management Supervisory Service was established "to ensure that each agency has the highest quality managers and supervisors who are responsive to the needs of the government." D.C.Code § 1–609.51.

days' notice, as provided in D.C.Code § 1–609.54(a).

In July 2003, the Office of Corporation Counsel opened an inquiry into allegations that Grant had sexually harassed a female member of his staff. The allegations were spelled out in a grievance filed by the staff member's union representative, a copy of which was given to Grant. Two months later, in September 2003, Grant was called into the office of Robert J. Spagnoletti, who was then the Corporation Counsel, and told that, effective immediately, he was being placed on administrative leave with pay pending the completion of the Office's investigation. Mr. Spagnoletti handed Grant a letter, which attributed this personnel action to "the sensitive nature" of the investigation, the "preliminary findings," and "the office's need to inquire as thoroughly as possible" into the accusations against Grant. The letter requested Grant's continued cooperation and assured him that he would have "the opportunity to respond to these allegations, directly or by providing witnesses," in due course. Grant asked to see the evidence of the charges against him, but Mr. Spagnoletti refused to provide it to him at that time. The Corporation Counsel then directed Grant to turn over his parking pass and government employee identification, and had him escorted off the premises.

The next day, Grant's attorney sent a letter protesting the summary treatment of her client, vigorously denying the allegations of sexual harassment, and demanding that he be allowed to return to his duties immediately. The letter complained that Grant had been subjected to a disciplinary action "tantamount to termi-

nation," without cause and in violation of his rights to notice and a hearing under the CMPA. Mr. Spagnoletti promptly responded to this correspondence, assuring Grant's attorney in writing that her client had not been terminated and that his temporary placement on administrative leave with full pay was "neither disciplinary nor punitive." Rather, the action was taken only to ensure a full and fair inquiry by allaying the concern that employees would be "reluctant to come forward" with information about the allegations under investigation if Grant continued to be present in the office. Mr. Spagnoletti reiterated that Grant would be afforded "a full opportunity to respond to the allegations before the investigation is concluded."[4]

The following month, Grant commenced the present lawsuit against the District. His complaint charged that the Corporation Counsel had violated his procedural rights under the CMPA and his Fifth Amendment right to due process of law by publicly placing him on paid administrative leave without notice or an opportunity to see and rebut the evidence against him. Grant sought a preliminary and a permanent injunction directing the Corporation Counsel to reinstate him to his position and to destroy all records of the allegations against him, together with monetary compensation for emotional distress and the injury to his reputation and career resulting from his public placement on leave.[5]

The trial judge denied Grant's motion for a preliminary injunction, finding, *inter alia*, "no substantial likelihood" that he would prevail on the merits of his claims,

---

4. Two weeks later, in furtherance of that opportunity, the Chair of the Corporation Counsel's Equal Employment Opportunity Officers Committee wrote Grant's attorney to request an interview with him.

5. In subsequent court filings, Grant complained that his co-workers were aware that he was being investigated for sexual harassment, and that the Office of Corporation Counsel was the source for a newspaper article reporting his placement on paid leave in connection with the investigation.

given his status as an at-will employee.[6] Soon after this ruling, Grant retired from his position with the District government. His decision to retire, Grant subsequently explained, was "due to his placement on indefinite administrative leave."[7]

At about the same time that Grant retired, the District filed its motion to dismiss or, in the alternative, for summary judgment. The District argued that as an at-will employee in the Management Supervisory Service, Grant did not have the procedural rights of Career Service employees under the CMPA, and further that he lacked a property interest in his employment sufficient to trigger Fifth Amendment due process protections. On January 12, 2004, the date Grant's response was due, he moved for an extension of the due date to January 20, 2004. His motion stated that "no further extensions should be necessary." The trial judge granted the motion. Grant did not file his response to the District's motion on January 20, however. Instead, at 11:30 p.m. that night, Grant filed a motion seeking to extend the due date by an additional day, to January 21, 2004.[8]

Unaware of this eleventh hour filing, the trial judge granted the District's motion. The order was signed on January 20 and entered on the docket the following day. The judge agreed with the District that

Grant's rights had not been violated because he was an at-will employee. Upon learning of the order, Grant immediately filed a second motion for enlargement of time (in effect, though not in name, a motion for relief from the judgment), together with his now-completed opposition papers (which reiterated the arguments he had made when he unsuccessfully moved for a preliminary injunction). On February 18, 2004, the judge denied the motion for enlargement of time as moot.

## II.

The main issue raised in this appeal is whether the trial judge erred in ruling as a matter of law that Grant had no statutory or Fifth Amendment right to notice and a hearing before being placed on paid administrative leave. We must dispose of two preliminary contentions before we address that issue.

First, the District is correct that this appeal has been rendered partially moot by the fact that Grant voluntarily retired after he filed his lawsuit.[9] "In general, when the issues presented are no longer 'live' or the parties lack 'a legally cognizable interest in the outcome,' a case is moot." *Settlemire v. District of Columbia Office of Employee Appeals,* 898 A.2d 902, 904–05 (D.C.2006) (citations omitted).

---

6. The judge also found that Grant would not suffer irreparable harm absent preliminary injunctive relief inasmuch as he was on leave with pay, that the balance of harms did not favor Grant, and that an injunction would not be in the public interest.

7. This statement appears in Grant's opposition to the District's motion to dismiss or, in the alternative, for summary judgment.

8. The motion recited that an additional day was needed because his counsel had encountered unforeseen computer problems, and that the District consented to the enlargement of time.

9. The District did not raise the issue of mootness in the trial court, perhaps because Grant delayed his retirement until after the District filed its motion to dismiss or for summary judgment. Regardless, since mootness is, effectively, a jurisdictional defect, *see Cropp v. Williams,* 841 A.2d 328, 330 (D.C.2004) ("Although not bound strictly by the 'case or controversy' requirements of Article III of the U.S. Constitution, this court does not normally decide moot cases.") (citation omitted), the issue may be raised for the first time on appeal.

Grant's retirement moots his request for an order of reinstatement. *See id.* at 906; *Cropp, supra* note 9, 841 A.2d at 330; *see also Taylor v. Resolution Trust Corp.,* 312 U.S.App. D.C. 427, 432, 56 F.3d 1497, 1502 (1995) ("Once the movant is no longer in harm's way, a motion for an injunction becomes moot.") (citation omitted). The District recognizes, however, that Grant's retirement does not necessarily moot his requests for other relief, such as monetary compensation for the injury to his reputation allegedly caused by his placement on administrative leave. *See Kennedy v. District of Columbia,* 654 A.2d 847, 852 (D.C. 1994) (stating that despite employee's retirement on disability, "unresolved issues of damages ... constitute a sufficient 'concrete stake' in the litigation" to preclude a finding of mootness) (citations omitted); *Taylor, supra.*

██ Second, appellant is not entitled to reversal, as he contends, merely because the trial judge did not grant his timely (if last-minute) request for a one-day extension of the filing deadline. Even if that was a mistake,[10] it ultimately was of no consequence, for the propriety of granting the District's motion turns on questions of law as to which our review is *de novo,* and we are able to consider all of Grant's arguments (and proffered evidence) bearing on those questions.[11]

██ We turn to Grant's claim that his placement on paid administrative leave

without notice or a hearing violated his procedural rights under the CMPA and his Fifth Amendment right to procedural due process. As an at-will employee in the Management Supervisory Service ("MSS"), Grant served at the pleasure of the appointing authority, and he is unable to point to any statutory rights that were infringed by the Corporation Counsel's action. While the CMPA does impose limits on the authority to place an employee on annual leave or leave without pay (so-called "enforced leave"), *see* D.C.Code § 1–616.54, those limits do not apply to paid administrative leave. And while the CMPA and its implementing regulations provide procedural protections to Career Service employees who are subject to adverse employment actions (such as notice and hearing rights, and the right to be terminated only for cause), MSS employees are statutorily excluded from the Career Service and thus cannot claim those protections. *See id.* §§ 1–608.01(a), 1–609.51; *see also Leonard v. District of Columbia,* 794 A.2d 618, 624 (D.C.2002). MSS employees are entitled to fifteen days' notice prior to being terminated, *id.* § 1–609.54(a), and to severance pay "upon separation for non-disciplinary reasons," *id.* § 1–609.54(b), but those rights have no bearing on this case, because Grant was not terminated (nor was any of his pay withheld). Nor, contrary to his claim, did Grant's placement on administrative leave deprive him of any statutory right to "re-

---

**10.** Clearly, it was a mistake (even though an inadvertent one) to decide the District's motion without considering Grant's request for an enlargement of time. Whether that request necessarily should have been granted is another matter, which we do not decide. The judge had discretion pursuant to Superior Court Civil Rule 6(b)(1) to grant an enlargement of time "for cause shown." (The fact that the District had consented to the enlargement motion did not require that the motion be granted. *See generally Moorehead v. District of Columbia,* 747 A.2d 138, 148 (D.C.

2000).) Similarly, the judge could have vacated her order of dismissal after Grant's motion and opposition papers were brought to her attention.

**11.** Parenthetically, we note that Grant is mistaken in suggesting that the judge erroneously disposed of his case *because* she believed the District's motion was unopposed. *See, e.g., National Voter Contact, Inc. v. Versace,* 511 A.2d 393, 398 (D.C.1986); *Milton Props., Inc. v. Newby,* 456 A.2d 349, 354 (D.C.1983). The judge ruled on the merits.

treat" to a position in the Career Service. If Grant understood he had such a right, he was in error. The CMPA provides only that, "[u]pon termination," MSS employees who have come from the Career Service "may retreat, *at the discretion of the personnel authority,* within 3 months of the effective date of the termination, to a vacant position within the agency to which he or she was promoted for which he or she is qualified." *Id.* § 1–609.54(a) (emphasis added). Since retreat is an option committed to the discretion of management, Grant would not have had a right to retreat even if he had been terminated, which he was not.

■■■■ "To trigger due process protection in the area of public employment, an employee must 'have a legitimate claim of entitlement to it.'" *Leonard,* 794 A.2d at 624 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The "employee must show that a protected liberty or property interest is implicated." *Id.* at 623 (citing *Roth,* 408 U.S. at 569–70, 92 S.Ct. 2701). "For example, tenure and contract provisions have been recognized as property interests of the type safeguarded by due process protections." *Id.* at 624, 92 S.Ct. 2701 (citations omitted). But, in general, "an at-will employee has no liberty or property interest in continued employment, and it is clear that D.C. law creates no such interest." *O'Donnell v. Barry,* 331 U.S.App.

D.C. 272, 285, 148 F.3d 1126, 1139 (1998) (citation omitted); *see also Hall v. Ford,* 272 U.S.App. D.C. 301, 311, 856 F.2d 255, 265 (1988) ("Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely."). Having no relevant statutory or contractual rights to invoke, Grant plainly did not have a cognizable property interest in his continued employment. The trial judge correctly so held.

■■■■ Grant fares no better with his claim that the Corporation Counsel's decision to place him on leave deprived him of a protected liberty interest. Grant argues that the action impermissibly defamed or stigmatized him, to the detriment of his reputation and future career prospects, because it allegedly implied to his co-workers and members of the general public that the charge of sexual harassment was true. (We distinguish stigmatization from defamation in that "it does not depend on official speech, but on a continuing stigma or disability arising from official action." *O'Donnell,* 331 U.S.App. D.C. at 286, 148 F.3d at 1140.) However, even assuming that Grant's temporary placement on paid administrative leave actually did convey a defamatory or stigmatizing message to those who learned of it,[12] he still failed, as a matter of law, to proffer evidence of a due process violation.

---

12. One might view this claim with skepticism, given that (1) Grant was not found to have engaged in any wrongdoing, (2) he suffered no loss of pay or benefits, (3) the expressed purpose of placing him on leave was not to discipline him but merely to facilitate a full and fair investigation, and (4) Grant was assured that he would have the opportunity to respond to the charge of sexual harassment before any final determination of his "guilt" would be made. Certainly we cannot equate a public employer's mere confirmation that an employee is being investigated for wrongdoing with a declaration that the employee did in fact commit wrongdoing. We are more inclined to view Grant's temporary placement on paid administrative leave much as we viewed the "mere reassignment" at issue in *Settlemire,* as "a routine management prerogative that does not connote wrongdoing or incompetence on the employee's part." 898 A.2d at 906. Nonetheless, we shall assume for present purposes that Grant could prove that the action taken by the Corporation Counsel really was implicitly defamatory or stigmatizing, and potentially injurious to his reputation and employment prospects.

■ Reputation *per se* is not a protected liberty interest, and, without more, defamation or stigmatization by the government does not give rise to any right to procedural due process, no matter how serious the harm to the subject's good name or the impairment of future employment prospects flowing from such reputational harm. *See Paul v. Davis,* 424 U.S. 693, 694, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Where government employees are concerned, the Supreme Court acknowledged in *Roth* that a constitutionally-protected liberty interest may be implicated when an employee is defamed or stigmatized in connection with the termination of his employment, if the action seriously threatens to damage the employee's reputation or to foreclose the employee from taking advantage of future employment opportunities. 408 U.S. at 573, 92 S.Ct. 2701; *see also Leonard,* 794 A.2d at 627; *O'Donnell,* 331 U.S.App. D.C. at 275–76, 148 F.3d at 1139–40. But as the Court subsequently emphasized in *Paul v. Davis,*

the defamation had to occur in the course of the termination of employment. Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.

424 U.S. at 710, 96 S.Ct. 1155. Surveying its past decisions, the Court derived the general rule in *Paul v. Davis* that a defamatory or stigmatizing government action is not a deprivation of liberty within the purview of the Due Process Clause unless the action extinguishes, removes, or substantially alters "a right or status previously recognized" and protected by state or federal law. *Id.* at 711, 96 S.Ct. 1155.

■ This requirement of the loss of a legal right or a substantial change in legal status applies to adverse government employment actions.[13] We agree, therefore, with the District of Columbia Circuit that, for the defamation or stigmatization of a government employee to give rise to a right to procedural due process, it must be *accompanied by* "a discharge from government employment or at least a demotion in rank and pay,"[14] or *conjoined with* an

---

**13.** Loss of government employment is a sufficiently tangible deprivation to satisfy the *Paul v. Davis* test even if the position is at-will and the employee therefore has no protected property interest in his continued employment. As the United States Court of Appeals for the District of Columbia Circuit has explained:
> *Paul* explicitly recognized that the combination of government defamation plus the failure to rehire or the discharge of a government employee states a liberty interest claim even if the discharge itself deprives the employee of no property interest protected by the [F]ifth or [F]ourteenth [A]mendments. As the Seventh Circuit has put it, "[i]t is the individual's status as a government employee and not his property interest in continued employment which furnishes the 'plus' that raises reputation to the level of a constitutionally protected liberty interest." *Dennis v. S. & S. Consolidated Rural High School Dist.,* 577 F.2d 338, 343 (5th Cir.1978)....

*Doe v. United States Dept. of Justice,* 243 U.S.App. D.C. 354, 368–69, 753 F.2d 1092, 1106–07 (1985).
> The right to follow a chosen trade or profession without unreasonable governmental interference also has been held to be a liberty interest entitled to due process protections. *See, e.g., Kartseva v. Department of State,* 308 U.S.App. D.C. 397, 402, 37 F.3d 1524, 1529 (1994) (holding that translator denied a security clearance might be entitled to a hearing if the stigma of the denial had the effect of broadly precluding her from pursuing her chosen profession).

**14.** *Accord Leonard,* 794 A.2d at 628 (quoting *Alexis v. District of Columbia,* 44 F.Supp.2d 331, 338–39 (D.D.C.1999)). It is fair to equate a demotion in rank and pay with a dismissal from a position, but this equation must be construed strictly. As we read *Paul v. Davis,* ordinary reassignments and adjustments of pay not amounting to full-scale de-

official personnel action to "formally deprive[]" the employee of a legal right or "so severely impair[]" the employee's "ability to take advantage of a legal right" as practically to extinguish it. *Mosrie v. Barry,* 231 U.S.App. D.C. 113, 123, 718 F.2d 1151, 1161 (1983); *see also O'Donnell,* 331 U.S.App. D.C. at 287, 148 F.3d at 1140–41.[15]

Grant did not suffer the requisite loss of employment rights or substantial change in legal status. Unlike the government employee in *Lyons v. Barrett,* 271 U.S.App. D.C. 151, 155, 851 F.2d 406, 410 (1988), who was terminated after an internal investigation into allegations that he had sexually harassed a female co-worker, Grant was not fired from his job. Grant likewise was not demoted, nor did he suffer any loss of pay or other benefits to which he was entitled. Indeed, he was not disciplined at all. Grant can point to no right under the CMPA or any other law that was taken away from him or otherwise infringed. Furthermore, though his temporary placement on paid administrative leave pending the outcome of an investigation might be expected to raise questions in potential employers' minds, it did not preclude him from pursuing other employment in or out of the government. *Cf. Mosrie,* 231 U.S.App. D.C. at 123–24, 718 F.2d at 1161–62 (lateral transfer and public criticism of police captain held not to qualify as a deprivation of liberty, even if the negative publicity resulted in loss of

some employment opportunities and income); *O'Donnell,* 331 U.S.App. D.C. at 287, 148 F.3d at 1141 (police official "may well have suffered some stigma in the job market as a result of his demotion" and loss of security clearance, but not enough to infringe his liberty interest in being able to pursue his chosen profession). Lastly, having decided to quit his job with the Corporation Counsel and to forego the name clearing hearing he claims to have wanted, Grant cannot complain that his job prospects will be dimmed if the subsequent outcome of the investigation was adverse to him or if the accusations (or adverse findings) remain part of his personnel record. *See Siegert,* 500 U.S. at 234, 111 S.Ct. 1789 (holding that where alleged government defamation is uttered *after* employee has voluntarily resigned from government service, it cannot be the basis for a due process claim, even if the defamation "undoubtedly damage[d] the reputation of one in his position, and impair[ed] his future employment prospects").

## III.

We have concluded that Grant did not assert a valid statutory or constitutional claim, because the decision of the Corporation Counsel to place him temporarily on paid administrative leave neither violated the CMPA nor deprived Grant of a protected liberty or property interest. The

motion or discharge from employment are unlikely to rise to the degree of deprivation necessary to support a due process claim.

**15.** We recognize that the so-called "reputation-plus" standard of *Paul v. Davis* has engendered critical comment, and that its rationale has been thought elusive. *See, e.g., Mosrie,* 231 U.S.App. D.C. at 124–25, 718 F.2d at 1162–63 (Ginsburg, J., concurring). In *O'Donnell,* the D.C. Circuit commented on the rationale animating the reputation-plus standard as follows:

Although the conceptual basis for reputation-plus claims is not fully clear, it presumably rests on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired. Requiring a demotion or firing to trigger a defamation claim also helps to limit the scope of permissible due process claims to a small set of truly serious claims, thus limiting the constitutionalization of tort law.

331 U.S.App.D.C. at 286, 148 F.3d at 1140.

judgment of the trial court is, therefore, affirmed.