## LOCAL 36 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, Appellant,

v.

## Dennis RUBIN & District of Columbia, Appellees.

### No. 09–CV–543.

District of Columbia Court of Appeals.

Submitted May 25, 2010.

Decided July 22, 2010.

---

Jeremiah A. Collins, Devki Virk, Washington, DC, and Jason Peckenpaugh were on the brief for appellant.

Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Richard S. Love, Senior Assistant Attorney General, were on the brief for appellees.

Before KRAMER and OBERLY, Associate Judges, and BELSON, Senior Judge.

OBERLY, Associate Judge:

Local 36, International Association of Firefighters, AFL–CIO is a union that represents uniformed personnel of the District of Columbia Fire & Emergency Medical Services Department ("FEMS") through the rank of Captain. Dennis Rubin, the Chief of FEMS, has announced that all uniformed FEMS employees will be subject to criminal background checks. The Union sued Rubin and the District of Columbia in Superior Court, seeking an injunction preventing Rubin from implementing the background check policy and a declaration that the policy violates District and federal law. The Superior Court held a hearing to consider the Union's request for an injunction, consolidated that hearing with a trial on the merits, and entered judgment for Rubin and the District.

On the Union's appeal, we do not reach the merits, but conclude that the trial court erred by granting judgment to appellees because the case is not ripe for judicial review. Although the parties have not addressed the ripeness issue in their briefs, the lack of ripeness is plain on the record before us. The Union's complaint, the transcript of the hearing on the motion-for-a-preliminary-injunction-turned-trial, and the parties' briefs all make clear that the challenged policy has not been implemented. Moreover, the parties have not sought to supplement the briefs or the record to show that facts have changed since briefing was complete. We decline to issue an advisory opinion on the validity of a policy that, so far as the record reveals, has never been put into effect. Accordingly, we vacate the judgment of the Superior Court and remand the case with instructions to dismiss the Union's complaint.

## I.

This case involves two statutes, one passed by Congress and the other by the D.C. Council. The congressional statute is the National Child Protection Act of 1993, Pub.L. No. 103–209, 107 Stat. 2490 (1993), codified, as amended, at 42 U.S.C. § 5119 *et seq.* The local statute is the Criminal Background Checks for the Protection of Children Act of 2004, D.C.Code § 4–1501.01 (2008).

For our purposes, the key provisions of the national act read as follows. Section 5119a (a)(1) authorizes States to "have in effect procedures ... that require qualified entities designated by the State to contact an authorized agency of the State to request a nationwide background check for the purpose of determining whether a provider has been convicted of a crime that bears upon the provider's fitness to have responsibility for the safety and well-being of children, the elderly, or individuals with disabilities." A "provider" is:

(A) a person who—

(i) is employed by or volunteers with a qualified entity (including an individual who is employed by a school in any capacity, including as a child care provider, a teacher, or another member of school personnel);

(ii) who owns or operates a qualified entity; or

(iii) who has or may have unsupervised access to a child to whom the qualified entity provides child care; and

(B) a person who—

(i) seeks to be employed by or volunteer with a qualified entity (including an individual who seeks to be employed by a school in any capacity, including as a child care provider, a teacher, or another member of school personnel);

(ii) seeks to own or operate a qualified entity; or

(iii) seeks to have or may have unsupervised access to a child to whom the qualified entity provides child care.

42 U.S.C. § 5119c(9). The act defines "care" to mean "the provision of care, treatment, education, training, instruction, supervision, or recreation to children, the elderly, or individuals with disabilities." 42 U.S.C. § 5119c(5).

The local act, passed by the D.C. Council in 2005, provides that the "following individuals shall apply for criminal background checks":

(1) An applicant who is under consideration for paid employment by a covered child or youth services provider;

(2) An applicant who is under consideration for voluntary service in an unsupervised position by a covered child or youth services provider;

(3) An employee of a covered child or youth services provider; and

(4) A volunteer who serves a covered child or youth services provider in an unsupervised position.

D.C.Code § 4–1501.03(a). The act defines "[c]overed child or youth services provider" as "any District government agency providing direct services to children or youth and any private entity that contracts with the District to provide direct services to children or youth, or for the benefit of children or youth, that affect the health, safety, and welfare of children or youth, including individual and group counseling, therapy, case management, supervision, or mentoring." D.C.Code § 4–1501.02(3).

Since the local act was passed, the District's views regarding the applicability of the act to FEMS have changed. In the first rule implementing the act—an emergency rule that became effective on March 18, 2005—the District designated all of FEMS as a "covered child or youth services provider." 52 D.C.Reg. 4067, 4069. And in emergency and proposed rules that superseded the earlier rules and were promulgated on May 5, 2005, the District again designated FEMS in its entirety as a covered entity. 52 D.C.Reg. 8102, 8104. No comments having been received on the May 5 rules, those rules became final on June 28, 2005. 52 D.C.Reg. 6646.

On July 25, 2006, the District adopted emergency rules that modified the coverage of the local act with respect to FEMS. Specifically, the July 25 rules provided that only "the Fire Prevention Bureau (FPB)" within FEMS would be covered by the local act, "provided that the primary duties of any position designated as subject to the Act within the FPB shall require direct contact with children or youth, and the incumbent of the position would not otherwise be subject to a criminal background check or traffic record check in accordance with existing policies and practices for [FEMS]." 53 D.C.Reg. 7276, 7282.

On May 5, 2008, the District reverted to its original understanding, and promulgat-

ed emergency rules that "delete[d] the language limiting agency coverage pursuant to the [local] Act for [FEMS] to specific organizational units within [FEMS]." 55 D.C.Reg. 7145. Again, the District received no comments in response to the emergency rules, and the rules became final on July 28, 2008. 55 D.C.Reg. 8870.

On February 26, 2009, the Union filed a complaint in Superior Court, taking aim at two documents issued by FEMS Chief Rubin. The first document was Special Order 2007–102, which was effective on November 26, 2007. The order stated that "in the very near future" FEMS would "expand" its background checks "to include the rank and file emergency response capable employees"; the ultimate goal was to "have all uniform employees" of FEMS undergo a "new, mandatory, criminal background check." The second target of the Union's complaint was a memorandum from Rubin with an effective date of January 6, 2009. The January 2009 memorandum stated that in March, FEMS would "begin the implementation of . . . random drug/alcohol testing on all operational personnel." In addition, the memorandum said that, also beginning in March, FEMS would begin to conduct "background checks on every operational employee."

As relevant here, in its complaint the Union requested a temporary restraining order, preliminary injunction, and permanent injunction directing the District and Rubin "to halt implementation of their criminal background check policy" as set forth in the November 2007 order and the January 2009 memorandum. The Union alleged (1) that the announced programs violated the local and federal acts, and (2) that the result of any background check had to be provided only to the Department of Human Resources, not to FEMS directly, as the Union feared it would.

There is no indication in the record that either Rubin's November 2007 order or his January 2009 memorandum has been implemented. In its complaint, filed at the end of February 2009, the Union warned of the consequences that would happen "[i]f Defendants [were] allowed to implement their criminal background check policy." At the trial on April 10, 2009, the Union conceded that although the District had announced in January that the program would begin in March, "[t]hat [*i.e.,* implementation of the program] obviously hasn't happened yet." The Union nonetheless contended that the case was ripe for review because "defendants have stated that they [were] *about to implement* a very specifically described background check program." (Emphasis added.) But in its briefs in this court filed on August 21, 2009, and November 25, 2009, the Union did not advise of any developments that have taken place since the complaint was filed or the trial was held. Rather, the Union continues to challenge the November 2007 order and the January 2009 memorandum, not any acts taken pursuant to those documents.

At trial, the court ruled that the Union's claim that the results of any background checks were required to go to the Department of Human Resources, not to FEMS, was not ripe for review because whether FEMS would request those records was "hypothetical." Without addressing ripeness, however, the court reached the merits of the Union's principal argument and concluded that the announced programs were not contrary to either the national or local acts because firefighters "have responsibility for the safety and well-being of children, the elderly or individuals with disabilities."

## II.

"Ripeness is a justiciability doctrine designed 'to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *National Park Hospitality Ass'n v. Department of the Interior*, 538 U.S. 803, 807–08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)); *see also Metropolitan Baptist Church v. District of Columbia Dep't of Consumer & Regulatory Affairs—Historic Preservation Review Bd.*, 718 A.2d 119, 130 (D.C.1998). "[D]eclaratory judgment authority does not supersede the rules of justiciability," *Smith v. Smith*, 310 A.2d 229, 231 (D.C.1973); ripeness concerns therefore still apply in cases where, as here, the plaintiff seeks declaratory relief. *See also McIntosh v. Washington*, 395 A.2d 744, 749 (D.C.1978) (declaratory judgment may be appropriate in "a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged"). We may raise the issue of ripeness *sua sponte* even though neither party has discussed it in its briefs. *See* 13B Wright, Miller & Cooper, Federal Practice & Procedure § 3532.7, at 710 (4th ed. 2008) ("It is clear that ripeness may be raised by a court on its own motion, whether the question turns on theories attributed to the constitution or on prudential theories, and whether or not the parties all wish decision on the merits."); *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (same); *cf. Grant v. District of Columbia*, 908 A.2d 1173, 1177 n. 9 (D.C. 2006) ("since mootness is, effectively, a jurisdictional defect, the issue may be raised for the first time on appeal") (citation omitted).

■ In determining whether a challenge to administrative action is ripe for review, courts look to "(1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'" *Metropolitan Baptist Church*, 718 A.2d at 130 (quoting *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507). "Among other things, the fitness of an issue for judicial decision depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Atlantic States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C.Cir.2003) (quotation marks omitted); *see also Metropolitan Baptist Church*, 718 A.2d at 130–31. The hardship inquiry, "from the standpoint of the challenging party, entails an examination of the certainty and effect of the harm claimed to be caused by the administrative action." *Metropolitan Baptist Church*, 718 A.2d at 132 (quotation marks omitted). In this case, both prongs of the analysis weigh against review at this juncture.

■ As for fitness, the lack of finality of the District's action is the first hurdle for the Union. Since the local act was passed, the District's views have changed with regard to how (if at all) the act applies to FEMS employees. As discussed above, the District went from ruling that all of FEMS is covered by the local act, to ruling that the act applies only to several positions within FEMS, and back to its original, broader view. True enough, in January 2009, Chief Rubin announced that a broad program would be implemented in March. But as of April 2009, that program still was not reality, and the record before us does not reveal that things have changed since. To keep things in perspective, it bears remembering that although the November 2007 order promised an expansion of the background check in "the

very near future," the expansion evidently had not occurred as of February 2009, when the Union filed its complaint. Because facts appear to be in flux, "we have the classic institutional reason to postpone review: we need to wait for a rule to be applied to see what its effect will be." *Atlantic States Legal Found.*, 325 F.3d at 285 (quotation marks and editing omitted); *see also id.* at 284 (" 'a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all' ") (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)); *Metropolitan Baptist Church*, 718 A.2d at 131 (challenge to permit requirements was not fit for review where the effect of being subject to the requirements was undetermined).

The case also is not fit for review because further factual development would "significantly advance our ability to deal with the legal issues presented." *National Park Hospitality Ass'n*, 538 U.S. at 812, 123 S.Ct. 2026 (quotation marks omitted). The mere existence of two documents announcing the background check program leaves us to speculate regarding how the program might operate in practice. Moreover, the Union's success could depend on how the facts develop; it is conceivable, for instance, that certain FEMS employees do not provide "care" and "treatment" to "children, the elderly, or individuals with disabilities," 42 U.S.C. §§ 5119a (a)(1), and do not "provid[e] direct services to children or youth," or services "that affect the health, safety, and welfare of children or youth," D.C.Code § 4–1501.02(3). But until the facts are fleshed out, we cannot make a reasoned judgment as to the legal issues, at least not in the context of a facial challenge to the policy writ large. *See National Park Hospitality Ass'n*, 538 U.S. at 812, 123 S.Ct. 2026 (issue was not fit for review where challengers brought facial challenge to regulation governing so-called

concession contracts, but relied on "specific characteristics of certain types of concession contracts to support their positions"). Thus, because our resolution of the legal issues would benefit substantially from a more concrete setting, those issues are not fit for review. *See Metropolitan Baptist Church*, 718 A.2d at 131 (challenge to agency action was not fit for review where merits of that challenge could not "be determined as a legal matter but depend[ed] on the development of facts which [were] absent from the record before us"); *cf. Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review … until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him"); *see generally* 2 Richard J. Pierce, Jr., Administrative Law Treatise § 15.15, at 1382 (5th ed. 2010) ("courts are reluctant to review most [informal] agency statements" such as "letters, instruction manuals, reports, interpretative rules, policy statements, advisories, guidelines, oral conferences, testimony before congressional committees, and press releases").

■ As for the hardship prong, review at this juncture is unwarranted because "[o]n the record before us, we are unable to perceive the requisite 'certainty and effect' of any alleged hardship." *Metropolitan Baptist Church*, 718 A.2d at 132. The Union does not claim that the mere existence of the 2007 order and the 2009 memorandum has caused it any harm " 'felt in a concrete way,' " *id.*, or that these documents "require[ ]" the Union's members " 'to engage in, or to refrain from, any conduct.' " *Atlantic States Legal Found.*,

325 F.3d at 285 (quoting *Texas*, 523 U.S. at 301, 118 S.Ct. 1257); *cf. Abbott Labs.*, 387 U.S. at 152–53, 87 S.Ct. 1507 (challenge to regulations was ripe for review where regulations required challengers either to incur costs in changing their conduct or to risk prosecution; hardship element is satisfied "where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance"). The Union does claim that the background check policy will cause its members harm in the future; specifically, the Union alleges in its complaint that if the District implements the policy, the Union's members will be "subject to an unwarranted invasion of privacy" and "also will be exposed to unjustified and selective discipline by FEMS, which could injure their professional opportunities and reputation." But these potential harms are simply too "abstract, hypothetical, [and] contingent" to warrant judicial review at the present time. *Matthews v. District of Columbia*, 875 A.2d 650, 655 (D.C.2005) (quotation marks omitted). We are "unwilling" to address the merits of this case in "so abstract a context rather than in the concrete setting of a decision" by Chief Rubin and the District to require a Union member to undergo a background check. *Cropp v. Williams*, 841 A.2d 328, 330 (D.C. 2004) (per curiam).

### III.

The dispute that the Union brought to the Superior Court was not ripe for judicial review. Therefore, we vacate the Superior Court's judgment in favor of appellees, and remand the case with directions to dismiss the complaint. *See Cropp*, 841 A.2d at 331. The Union may "protect all of [its] rights and claims by returning to court when the controversy ripens." *At-lantic States Legal Found.*, 325 F.3d at 285.

*So ordered.*

Statement of BELSON, Senior Judge, concurring:

I join in the opinion of the court. Its application of the doctrine of ripeness to the record before us appears correct. My only reservation in joining is that the parties have not briefed the issue of ripeness. No oral argument was held. Our disposition on the ground of lack of ripeness will most likely come as a complete surprise to them. I would have preferred to give the parties a short period of time in which to file supplemental briefs addressing the issue. As it stands, we are ruling without the benefit of an adversarial presentation, or any presentation at all, by counsel on the issue of ripeness. If a party seeks rehearing, we should give the request especially careful consideration.