Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued January 13, 2003            Decided April 11, 2003

Nos. 99-1409 & 99-1414

ATLANTIC STATES LEGAL FOUNDATION, INC., ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND
CHRISTINE TODD WHITMAN, ADMINISTRATOR,
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENTS

UTILITY SOLID WASTE ACTIVITIES GROUP, ET AL.,
INTERVENORS

————

On Petitions for Review of an Order of the
Environmental Protection Agency

————

*Paul J. Hirsch* argued the cause and filed the briefs for petitioners.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Norman L. Rave, Jr.*, Attorney, U.S. Department of Justice, argued the cause and filed the briefs for respondents.

*Douglas H. Green* was on the briefs for intervenors. *Steven J. Groseclose* entered an appearance.

Before: HENDERSON, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: EPA promulgated regulations allowing electric, telephone, and natural gas utilities in New York State to accumulate hazardous waste at utility-owned central collection facilities without obtaining a permit. Petitioners are three environmental organizations with members in New York. They claim the regulations are inconsistent with the permit requirement in the Resource Conservation and Recovery Act, that the regulations violate the public's right to notice, and are arbitrary, capricious, an abuse of agency discretion, and contrary to law.

EPA issued the regulations as part of its Project XL, a program for replacing or modifying regulations in order to produce greater environmental benefits at lower costs. *See generally* Regulatory Reinvention (XL) Pilot Projects, 62 Fed. Reg. 19,872 (Apr. 23, 1997). The New York program is in the nature of a pilot project. EPA's regulations will not take effect unless and until the New York State Department of Environmental Conservation ("NYSDEC") adopts them after public notice and comment. Participation by utilities in the State is optional.

The regulations are directed at the handling of hazardous waste generated at "remote sites," which are defined as sites in New York within a utility's right-of-way that are not permanently staffed. Remote sites include, in the case of electric and telephone companies, manholes and transformer vaults; when serviced, sediment often must be removed; the sediment may exhibit toxicity characteristics for lead and thus be classified as a hazardous waste. Under present regulations, each remote location is considered a separate generator location, requiring a separate hazardous waste identification

number and separate reports. The waste is eventually sent to treatment, storage, or disposal facilities, each of which has an EPA-issued permit. Before shipping hazardous waste for treatment or disposal, some utilities—in order to prevent accidental releases—would prefer to consolidate wastes at secure central collection facilities along the same right-of-way as the remote locations. But current regulations either do not allow consolidation at an off-site location (a site that is not geographically contiguous to the property on which the waste is generated) or would impose burdensome recordkeeping and reporting requirements. EPA maintains that the Project XL regulations would reduce the risk posed by storage of waste at remote sites and would reduce pollution and economic costs associated with transporting many small loads of waste for treatment, storage, or disposal. Although the generally applicable rules require permits for storage facilities, *see* 42 U.S.C. § 6925, no permits would be required for the utility-owned collection sites under the Project XL regulations.

Before these regulations can have any effect in New York, several steps must occur. First, after publication in the *State Register* and a notice-and-comment period, the State agency will have to promulgate the regulations in final form, or modify them in response to comments. (In light of comments the State agency may, of course, decide not to implement the regulations.*) If the State agency does promulgate the regulations, utilities will have to decide whether to participate in the program. Those that do will have to notify local communities and governments and all parties who commented on the proposed rule before EPA (including the petitioners here). 40 C.F.R. § 262.90(c)(2). The notice must contain, among other things, a description of the project and the intended use of the central collection facility, the name and address of the facility, the intended duration of the project, contact persons, and notification of the closing date of the comment period.

---

\* Before a final state rule is implemented, the NYSDEC may issue a temporary "Enforcement Directive," but this also would require publication in the *State Register*, a public comment period, and consideration of the comments.

*Id.* § 262.90(c)(3). Public notice under the regulations consists of publication in a newspaper and two of the following: radio announcements, mailings to those within five miles of the site, community meetings, presentations to the local community board, placement in the nearest public library, and publication on the utility's website. *Id.* § 262.90(c)(2). The utility must compile all of the comments and questions and respond to them. *Id.* § 262.90(c)(5). It then must notify the appropriate official within the NYSDEC, who will respond to comments received and choose to accept, reject, or place conditions on the specific proposal. *See id.* § 262.92(e)(3); *see also* Project XL Rulemaking for New York State Public Utilities, 64 Fed. Reg. 37,624, 37,625 (July 12, 1999) ("Although today's rule references 'EPA,' 'NYSDEC' will be substituted for 'EPA' when the State adopts these requirements as State law.").

Petitioners argue that the utility-owned collection facilities will be storage facilities under 42 U.S.C. § 6925, and that the owners therefore must obtain permits before building them. Petitioners also complain that the regulations' public notice requirements for building a central collection facility differ from what would be required for a storage facility. The regulations, they say, set up "notification ... designed to fail," and thus must be vacated as inconsistent with the statutory framework. Petitioners also contend that the regulations are arbitrary and capricious because they are inconsistent with other EPA regulations, and are an abuse of discretion because they ignore the requirements of Executive Order No. 12,898, regarding environmental justice.

Although no party has raised the subject, we view the questions presented in the petitions as not ripe for judicial review. *See Utility Air Regulatory Group v. EPA*, 320 F.3d 272, 277 (D.C. Cir. 2003). Federal courts are limited by Article III of the Constitution to deciding "Cases" and "Controversies," and by prudential considerations, which the court may raise *sua sponte*. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). Issues that are "ill-defined," *United Pub. Workers v. Mitchell*, 330 U.S. 75, 90 (1947), or otherwise unfit for judicial decision at the moment, and those issues for

which no substantial hardship would result from postponing review are not ripe. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *Catholic Soc. Servs., Inc.*, 509 U.S. at 57–58; *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998); *Ass'n of Am. Railroads v. Surface Transp. Bd.*, 146 F.3d 942, 946 (D.C. Cir. 1998). A "regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

Among other things, the fitness of an issue for judicial decision depends on whether it is "purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Clean Air Implementation Project*, 150 F.3d at 1204 (internal quotation marks omitted). Claims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues. *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1039 (D.C. Cir. 2002). But even purely legal issues may be unfit for review. *See Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 167 (D.C. Cir. 1997). So here. No one can say with certainty that the New York authorities will adopt the Project XL regulations as they are now written or will modify them. Even if New York does adopt the regulations *en masse*, we still would not know which utilities will opt into the program or where they will locate their central collection facilities. Yet a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

When and if the program is implemented it will be easy enough to determine whether the notice requirements in the regulations adequately apprised interested persons. Then too there will be evidence—none of which we have at the moment—regarding the amount of waste expected to be

stored at a particular collection facility, the frequency of deliveries of waste to the facility, and other details that may assist in deciding whether the facility operates as a storage facility under 42 U.S.C. § 6925(a), and thus must obtain a permit, as petitioners argue. It will also become apparent whether petitioners have standing because of their proximity to the site of one of these facilities, a point of dispute in this litigation. All of these developments are likely to assist the court in deciding the case. In short, we have "the classic institutional reason to postpone review: we need to wait for 'a rule to be applied [to see] what its effect will be.'" *Louisiana Envtl. Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996) (quoting *Diamond Shamrock Corp. v. Costle*, 580 F.2d 670, 674 (D.C. Cir. 1978)).

Another factor weighing against deciding the case at this time is the consideration of finality. EPA has finished with the regulations. But, as we have said, there is still the possibility that New York will modify the regulations after public notice and comment. This may require EPA to act again to approve any significant changes. Absent that, EPA's role is limited and NYSDEC will have the primary enforcement responsibility. Intervenors—the utilities' trade associations and Consolidated Edison—suggest that there is no final agency action in this case, which would be a separate reason for dismissing the appeal. The lack of final agency action depends on "whether the agency's position is definitive and whether it has a direct and immediate . . . effect on the . . . parties." *Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746 (D.C. Cir. 2001) (internal quotation marks omitted) (first alteration in original). Rather than pronouncing on the finality of EPA's action, it is enough to point out that before the regulations have any effect, on the utilities or on the petitioners, New York must act and in acting might alter EPA's product.

As to the hardship on petitioners from delaying judicial review, petitioners cannot show that they will suffer any injury in the interim. They are "not required to engage in, or to refrain from, any conduct." *Texas*, 523 U.S. at 301. No central collection facility is operating or even proposed. With

all of the further steps that must take place before a utility in New York State begins to use a central collection facility, there is no current, direct effect on the health or welfare of petitioners' members. *Id.* Petitioners may protect all of their rights and claims by returning to court when the controversy ripens. (The need to bring fresh litigation is not a reason for finding an issue ripe. *See, e.g.*, *AMFAC Resorts, L.L.C. v. United States Dep't of Interior*, 282 F.3d 818, 838 (D.C. Cir.), *cert. granted sub nom. Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 123 S. Ct. 549 (2002).) We are not concerned that EPA's allegedly inadequate notice rules will allow a facility to be built without giving petitioners an opportunity for judicial review. As commenters on the EPA's rules, petitioners must be notified of proposed facilities.

We recognize that 42 U.S.C. § 6976(a)(1) requires a petition for review to be filed within ninety days of the promulgation of a final regulation by EPA. But we have previously held that the time limit does not begin to run until the claim ripens. *See, e.g.*, *Louisiana Envtl. Action Network*, 87 F.3d at 1385; *Baltimore Gas & Elec. Co. v. ICC*, 672 F.2d 146, 149 (D.C. Cir. 1982). Therefore, as long as petitioners bring another petition for review within ninety days of the time a utility provides notice of a site it intends to use as a central collection facility under these rules, the petition will be timely.

For the reasons stated, the petitions for judicial review are dismissed.

*So ordered.*