# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 8, 2008            Decided July 8, 2008

No. 07-1475

CTIA - THE WIRELESS ASSOCIATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

T-MOBILE USA, INC., ET AL.,
INTERVENORS

---

Consolidated with 07-1477 and 07-1480

---

On Petitions for Review of
Orders of the Federal Communications Commission

---

*Helgi C. Walker* argued the cause for petitioners CTIA -
The Wireless Association and Sprint Nextel Corporation. With
her on the briefs were *Thomas M. Messner* and *Christopher J.
Wright.*

*Matthew A. Brill* argued the cause for petitioner USA
Mobility, Inc. With him on the briefs were *Barry J. Blonien* and
*Erica R. Goldberg*.

*Michael T. Fitch*, *Lynn R. Charytan*, *Samir C. Jain*, *Craig E. Gilmore*, *Travis E. Litman*, *Carl W. Northrop*, *Thomas J. Sugrue*, *Sara Leibman*, *T. Scott Thompson*, and *Christopher A. Fedeli* were on the brief for intervenors in support of petitioners.

*Nandan M. Joshi*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the briefs were *Thomas O. Barnett*, Assistant Attorney General, *Robert B. Nicholson* and *James J. Fredricks*, Attorneys, *Matthew B. Berry*, General Counsel, Federal Communications Commission, *Joseph R. Palmore*, Deputy General Counsel, *Daniel M. Armstrong*, Associate General Counsel, and *Richard K. Welch*, Acting Deputy Associate General Counsel.

Before: SENTELLE, *Chief Judge*, and RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

Concurring opinion filed by *Circuit Judge* ROGERS.

RANDOLPH, *Circuit Judge*: Hurricane Katrina exposed several weaknesses in the Gulf Coast's communications infrastructure, among which was the loss of power for critical communications networks. To address this problem, the Federal Communications Commission promulgated a rule requiring commercial mobile radio service (CMRS) providers[1] to maintain a minimum amount of emergency backup power for "all assets necessary to maintain communications that are normally powered from local commercial power." *In the Matter of Recommendations of the Independent Panel Reviewing the*

---

[1] The Commission's rules include cellular and paging service providers as CMRS providers. *See* 47 C.F.R. § 20.9(a).

*Impact of Hurricane Katrina on Communications Networks*, 22 F.C.C. Rcd 18,013, 18,035 (2007) ("Reconsideration Order"). The rule thus requires a backup power source (*e.g.*, batteries or generators) for every cell site and paging transmitter unless an exemption is met.[2]  Petitioners, who are wireless and paging service providers, oppose the backup power rule on the grounds that the Commission adopted it without statutory authority, that the parties lacked notice, and that the Commission acted arbitrarily and capriciously.  We decline to address these contentions now because the case is not ripe for review.

The backup power rule's provisions do not take effect until the Office of Management and Budget (OMB) approves the information collection provisions contained in the rule's extensive reporting mechanism.  *See id.* at 18,025, 18,026. Providers must submit, within six months of the effective date of the rule, lists of: each asset that is in compliance with the backup power requirement; each asset that is not in compliance but comes within one of the three exemptions; and each asset that is not in compliance and not exempted.  *Id.* at 18,024–25. For a noncompliant asset that meets an exemption, providers "must include a description of facts supporting the basis of the . . . claim of preclusion from compliance." *Id.* at 18,025.  For a noncompliant asset that does not meet an exemption, providers must modify the asset or file an "emergency backup power compliance plan" demonstrating how the "provider intends to

---

[2]The Commission provided exemptions for when compliance with the backup power rule "is precluded by: (1) federal, state, tribal or local law; (2) risk to safety of life or health; or (3) private legal obligation or agreement." 22 F.C.C. Rcd at 18,024.  For assets falling outside these specific exemptions, a provider can submit an alternative compliance plan that "ensure[s] backup power is available for 100 percent of the area covered by any non-compliant asset." *Id.* at 18,025.

provide emergency backup power to 100 percent of the area covered by [the] non-compliant asset." *Id.* This information is crucial to the operation of the backup power rule. Without it, the Commission would have difficulty enforcing the rule, and the exemptions and alternative compliance plan might be unworkable.

The need for OMB approval for information collections derives from the Paperwork Reduction Act ("the Act"), 44 U.S.C. § 3501 *et seq.* Whenever an agency seeks to collect information from the public, it must submit the collection plan to OMB, which can approve, disapprove, or "instruct the agency to make substantive or material change." 44 U.S.C. § 3507(e)(1). OMB must "provide at least 30 days for public comment prior to making a decision." § 3507(b). Though the Act only requires OMB approval of collections of information, the Commission ordered that the entire backup power rule, including the substantive minimum power requirements, "shall be effective on the date of Federal Register notice announcing OMB approval of the information collection." Reconsideration Order, 22 F.C.C. Rcd at 18,022. The Commission has not yet submitted the rule's information collection provisions to OMB for review, and thus OMB has not reached any decision.

Because none of the backup power rule's requirements takes effect until OMB approves the information collections, the case is unripe and we shall hold it in abeyance pending OMB's decision. The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). The inquiry involves "a two-part analysis,

evaluating '[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (quoting *Abbott Labs.*, 387 U.S. at 149).

The fitness of an issue for review depends, among other things, "on whether it is 'purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'" *Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (quoting *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998)). Though claims that the rule was adopted without statutory authority and is arbitrary and capricious "present purely legal issues[,] . . . even purely legal issues may be unfit for review." *Id.* Importantly, a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods.*, 473 U.S. 568, 580–81 (1985)).

These considerations weigh heavily in favor of holding the case in abeyance. We did so in analogous circumstances in *Devia v. NRC*, 492 F.3d 421 (D.C. Cir. 2007). That case arose from a company's desire to build and operate a spent nuclear fuel storage facility on land belonging to an Indian tribe. *Id.* at 422. The company needed a license from the Nuclear Regulatory Commission (NRC), a right-of-way from the Bureau of Land Management (BLM), and a lease from the Bureau of Indian Affairs (BIA). *Id.* After NRC granted the license, an association of tribal members petitioned for review in this court. *Id.* at 423. Later BLM and BIA denied the company's applications for the right-of-way and lease. *Id.* at 423. We concluded that the petition for review of NRC's decision was

not ripe for adjudication because the "denials of approval by the BLM and BIA appear to block the activity" of which the petitioners complained. *Id.* at 425. It was possible that the company could successfully petition for review of the BLM and BIA decisions or that the agencies could reverse themselves, thus clearing the way for construction of the facility, but those possibilities were too speculative to render the case ripe for review. *Id.* at 425–26. We made clear that the "question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the risk." *Id.* at 424 (citation omitted).

As in *Devia*, the effects of the Commission's action are contingent upon future action by another administrative agency. Though the other agencies in *Devia* had already denied approval, the court indicated that even "await[ing] uncertain approvals from other agencies" counsels against justiciability. *Id.* at 426. OMB must evaluate the information collections, and its disapproval would have a direct effect on the backup power rule. *Cf. Atl. States Legal Found.*, 325 F.3d at 285 ("[B]efore the regulations have any effect, . . . New York must act and in acting might alter EPA's product.").

As an independent regulatory agency, the Commission does have the power to overrule OMB, *see* 44 U.S.C. § 3507(f)(1), but that contingency cannot render this case justiciable.[3] *Cf. Am. Petroleum Inst. v. EPA*, 906 F.2d 729, 740–41 (D.C. Cir. 1990). The Commission might take that course and then again it might not. If OMB disapproves and the Commission fails to exercise its authority under § 3507(f)(1), any opinion on the merits would have addressed questions that

---

[3]The Commission has not represented that it will exercise this authority.

have become moot. *See Devia*, 492 F.3d at 426. If the Commission only overrules OMB in part, for instance declining to reinstate one of the exemptions, that would undoubtedly impact our review of whether the rule is arbitrary and capricious. OMB's action and the Commission's response are entirely speculative at this point. Something more must happen before the rule's "effects [are] felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148–49. This case exemplifies "the usually unspoken element of the rationale underlying the ripeness doctrine: If we do not decide it now, we may never need to." *Nat'l Treasury Employees Union*, 101 F.3d at 1431.

As to the second prong of the ripeness test, we see little hardship to the parties in not deciding the case now. Petitioners note "the burden of extended uncertainty, as well as the cost of committing resources to compliance or preparation for compliance for an indefinite period of time." Pet'rs Supp. Br. 13. But "mere uncertainty as to the validity of a legal rul[ing]" does not "constitute[] a hardship for purposes of the ripeness analysis." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 811 (2003). Petitioners' concern over preparation costs is more substantial – the Commission partially justified the time-frame for complying with the rule on grounds that the OMB process "giv[es] providers additional time to come into compliance," suggesting that providers should begin preparing before the rule takes effect. Reconsideration Order, 22 F.C.C. Rcd at 18,026. Nonetheless, until the rule does take effect, petitioners "are 'not required to engage in, or to refrain from, any conduct' during the time the case is held in abeyance." *Devia*, 492 F.3d at 427 (quoting *Atl. States Legal Found.*, 325 F.3d at 285). Because petitioners are not required to do anything to comply with the backup power rule while this case is held in abeyance, the delay they cite does not overcome the

judiciary's "theoretical role as the governmental branch of last resort." *Nat'l Treasury Employees Union*, 101 F.3d at 1431.

We recognize that parties still must petition for judicial review of the Commission's final orders within 60 days to preserve their rights, even though the case may be nonjusticiable due to pending OMB review. *See* 28 U.S.C. § 2344. We are not concerned that the Commission will use this holding to delay unnecessarily judicial review of its rules going forward. An agency has no interest in putting off review in these circumstances; its desire is to have its regulations take effect. And we have long presumed that executive agency officials will discharge their duties in good faith. *See Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1133 (D.C. Cir. 2007) (citing *United States v. Morgan*, 313 U.S. 409, 421 (1941)).

We will therefore hold this case in abeyance pending OMB's action.

*So ordered*.

ROGERS, *Circuit Judge*, concurring: While I agree that the petition for review of the Commission's emergency/backup power rule is unripe, I write to emphasize that neither this court's interim stay of the rule nor the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501 *et seq*., justified the postponement of PRA review of the rule's information collection provisions by the Office of Management and Budget ("OMB"). This misguided agency decision necessitates a holding that potentially complicates and delays review under the Hobbs Act, 28 U.S.C. § 2344.

A brief history of the rule illustrates the odd posture of this case, an approach whose eventual results include delay of potentially life-saving regulations and, ironically, significant additional paperwork all around. On May 31, 2007, the Federal Communications Commission adopted the emergency/backup power rule, 47 C.F.R. §§ 12.1 & 12.2. *In the Matter of Recommendations of the Independent Panel Reviewing Impact of Hurricane Katrina on Communications Networks*, 22 F.C.C. Rcd. 10,541, 10,587-88 (released June 8, 2007). In adopting the rule the Commission explained that it was implementing recommendations in a study of communications problems that endangered public safety and health during Hurricane Katrina. *See id*. at 10,541. The rule set "requirements that will help ensure the resiliency, redundancy and reliability of communications systems, particularly 911 and E911 networks and/or systems," *id*. at 10,587 and these sections were to take effect August 10, 2007, *see Recommendations of the Independent Panel*, *Final Rule*, 72 Fed. Reg. 37,655 (2007).

Upon reconsideration, the Commission modified section 12.2 to include, among other things, the filing of inventory reports and any claims of preclusion from compliance within six months of the date of this requirement. *In the Matter of Recommendations of the Independent Panel Reviewing Impact of Hurricane Katrina on Communications Networks*, 22 F.C.C.

Rcd. 18,013, 18,035-38 (Oct. 2, 2007) ("Order on Reconsideration"). Notwithstanding the emergency/backup power rule's public safety and health rationale, and the Commission's acknowledgment that in emergencies "the cost of failing to have [backup] power may be measured in lives lost," *id*. at 18,027, the Commission also ordered that all provisions of the rule, including section 12.2 "shall be effective on the date of the Federal Register notice announcing OMB approval of the information collection now contained in that rule," *id*. at 18,032.

The OMB has yet to begin review of the emergency/backup power rule. This is because the Commission deferred to OMB's request not to submit the rule for review. In its supplemental brief of May 19, 2008 the Commission states that "after this Court issued its February 28, 2008 order in this case staying the effective date of the rule pending judicial review, OMB informally informed FCC staff that it would prefer that the Commission not initiate the PRA process while the stay remained in effect." FCC Supplemental Br. at 5 (May 19, 2008).[1] No further explanation is offered. In the period between filing its responsive and supplemental briefs, however, the Commission appears to have altered its view concerning the significance of the information gathering provisions. Although the petitioners do not challenge the information and record-keeping provisions of the rule, and the Commission never suggested in its responsive brief that these provisions were

---

[1] By contrast, the Commission's responsive brief of Mar. 24, 2008 stated that submission of the rule to OMB was "expected . . . shortly." Resp. Br. at 18. Since the Commission's supplemental brief was filed, the court has not been notified of any change in the status of the rule.

inseparable from the backup requirement itself,[2] the Commission, in responding to the court's *sua sponte* concern about justiciability, *see* Order of May 9, 2008, has adopted the view that the reporting requirements are so integral a part of the rule that judicial consideration of the petition for review is premature. FCC Supplemental Br. at 8. *See* Order on Reconsideration, 22 F.C.C. Rcd. at 18,024-27; *cf*. Op. at 3-4.

Given the importance of the emergency/backup power rule to human life, public safety and health, the initial postponement of OMB review can only be explained by assuming that the court's interim stay of the rule or the PRA were incorrectly viewed as providing a basis for delaying mandated agency review of regulations. In issuing a stay, the court is required to determine whether there is a substantial likelihood that the petitioner would succeed in its challenges to the rule, and whether a stay would be in the public interest and not cause undue prejudice to any party. *See Wash. Metro. Area Transit Comm. v. Holiday Tours Inc*., 559 F.2d 841, 843 (D.C. Cir. 1977). However, this analysis does not consider, and should not be used as a proxy for, the question of whether an agency rule is so obviously unlawful that it is not worthwhile to carry out statutory procedures prescribed by the PRA. Regardless of which party might prevail upon appeal, the Commission

---

[2] Even in its supplemental brief the Commission does no more than repeat the provisions of the rule to the effect that it will not become effective until approved by OMB or reaffirmed by the Commission over an OMB disapproval pursuant to the PRA, 44 U.S.C. § 3507(f)(1) . FCC Supp. Br. at 9. During oral argument on May 8, 2008, Commission counsel stated in response to the court's *sua sponte* concern about ripeness only that "the FCC *seemed* to indicate in its reconsideration order that . . . th[e] [information gathering provision] is not severable." Oral Arg. Tr. at 21(emphasis added).

determined that the emergency/backup power rule was necessary to protect public safety and health and the petitioners have a right to judicial review pursuant to the Hobbs Act. Similarly, nothing in the PRA suggests that it was intended to interfere with the Commission's rulemaking determinations, *see* 44 U.S.C. § 3507 (f)(1), or the Hobbs Act.[3]   *See generally* S. COMM. ON GOVERNMENTAL AFFAIRS, PAPERWORK REDUCTION ACT OF 1980, S. REP. NO. 96-930 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6241.

Notwithstanding the inappropriate postponement of OMB review, the court correctly accepts that the petition for review is not prudentially ripe because OMB has not reached any decision regarding the rule's information gathering requirements, Op. at 4-5; *see Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Town of Stratford v. FAA*, 285 F.3d 84, 88 (D.C. Cir. 2002), and the Commission has not advised that it would overrule any disapproval by OMB.  The court relies on *Devia v. NRC*, 492 F.3d 421 (D.C. Cir. 2007), in concluding that the rule should be held in abeyance pending OMB review.  Op. at 5-6.   But the court's necessary response to the delay in submission of the rule to OMB is not costless:  In relying on the dictum in *Devia*, 492 F.3d at 424; Op. at 6, the court acknowledges the potential of a conundrum under the Hobbs Act, 28 U.S.C. § 2344, Op. at 8, for this court has held that the finality of a rule published in the federal register is not affected by the fact that the agency has not received OMB approval at

---

[3] To avoid "uncertainty and gamesmanship in the process by which FCC orders are appealed," Petrs' Supp. Br. of May 19, 2008 at 4, it may be the better part of discretion for the court, *sua sponte*, to state in its stay orders that the stay of a rule shall not affect prompt submission to OMB for PRA review. Otherwise delayed submissions would produce "anomalous results . . . contrary to the court's settled construction of the Hobbs Act," Petrs' Supp. Br. at 4.

time of promulgation, *Career Coll. Ass'n v. Reilly*, 74 F.3d 1265, 1269 (D.C. Cir. 1996).[4] It also leaves uncertain the propriety of the interim stay itself.

As a result of today's holding that the petition for review is prudentially unripe, the Commission should promptly submit the final rule for OMB review, *see* Op. at 8, as its apparent justifications for not doing so are not persuasive. More broadly, the court's holding should serve as a warning against using unrelated interim stays to justify delay in mandated interagency reviews.

---

[4] Unlike the emergency/back-up power rule, which as a whole does not become effective until after OMB review, only the information collection provisions of the rule in *Career College* were subject to OMB approval under the PRA. 74 F.3d at 1267-68.