Opinion for the Court filed by Circuit Judge RANDOLPH.
Concurring opinion filed by Circuit Judge ROGERS.
RANDOLPH, Circuit Judge:
Hurricane Katrina exposed several weaknesses in the Gulf Coast’s communications infrastructure, among which was the loss of power for critical communieations networks. To address this problem, the Federal Communications Commission promulgated a rule requiring commercial mobile radio service (CMRS) providers[1] to maintain a minimum amount of emergency backup power for “all assets necessary to maintain communications that are normally powered from local commercial power.” In the Matter of Recommendations of the Independent Panel Reviewing the Impact of Hurricane Katrina on Communications Networks, 22 F.C.C. Red 18,013, 18,035 (2007) (“Reconsideration Order”). The rule thus requires a backup power source {e.g., batteries or generators) for every cell site and paging transmitter unless an exemption is met.[2] Petitioners, who are wireless and paging service providers, oppose the backup power rule on the grounds that the Commission adopted it without statutory authority, that the parties lacked notice, and that the Commission acted arbitrarily and capriciously. We decline to address these contentions now because the case is not ripe for review.
The backup power rule’s provisions do not take effect until the Office of Management and Budget (OMB) approves the information collection provisions contained in the rule’s extensive reporting mechanism. See id. at 18,025, 18,026. Providers must submit, within six months of the effective date of the rule, lists of: each asset that is in compliance with the backup power requirement; each asset that is not in compliance but comes within one of the three exemptions; and each asset that is not in compliance and not exempted. Id. at 18,- *987 024-25. For a noncompliant asset that meets an exemption, providers “must include a description of facts supporting the basis of the ... claim of preclusion from compliance.” Id. at 18,025. For a non-compliant asset that does not meet an exemption, providers must modify the asset or file an “emergency backup power compliance plan” demonstrating how the “provider intends to provide emergency backup power to 100 percent of the area covered by [the] non-compliant asset.” Id. This information is crucial to the operation of the backup power rule. Without it, the Commission would have difficulty enforcing the rule, and the exemptions and alternative compliance plan might be unworkable.
The need for OMB approval for information collections derives from the Paperwork Reduction Act (“the Act”), 44 U.S.C. § 3501 et seq. Whenever an agency seeks to collect information from the public, it must submit the collection plan to OMB, which can approve, disapprove, or “instruct the agency to make substantive or material change.” 44 U.S.C. § 3507(e)(1). OMB must “provide at least 30 days for public comment prior to making a decision.” § 3507(b). Though the Act only requires OMB approval of collections of information, the Commission ordered that the entire backup power rule, including the substantive minimum power requirements, “shall be effective on the date of Federal Register notice announcing OMB approval of the information collection.” Reconsideration Order, 22 F.C.C. Red at 18,022. The Commission has not yet submitted the rule’s information collection provisions to OMB for review, and thus OMB has not reached any decision.
Because none of the backup power rule’s requirements takes effect until OMB approves the information collections, the case is unripe and we shall hold it in abeyance pending OMB’s decision. The “basic rationale” of the ripeness doctrine “is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.” Abbott Labs. v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The inquiry involves “a two-part analysis, evaluating ‘[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.’ ” Nat’l Treasury Employees Union v. United States, 101 F.3d 1423, 1431 (D.C.Cir.1996) (quoting Abbott Labs., 387 U.S. at 149, 87 S.Ct. 1507).
The fitness of an issue for review depends, among other things, “on whether it is ‘purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency’s action is sufficiently final.’ ” Atl. States Legal Found., Inc. v. EPA, 325 F.3d 281, 284 (D.C.Cir.2003) (quoting Clean Air Implementation Project v. EPA, 150 F.3d 1200, 1204 (D.C.Cir.1998)). Though claims that the rule was adopted without statutory authority and is arbitrary and capricious “present purely legal issues[,] ... even purely legal issues may be unfit for review.” Id. Importantly, a “claim is not ripe for adjudication if it rests upon ‘contingent future events that may not occur as anticipated, or indeed may not occur at all.’ ” Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting Thomas v. Union Carbide Agric. Prods., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).
These considerations weigh heavily in favor of holding the case in abeyance. We did so in analogous circumstances in Devia *988 v. NRC, 492 F.3d 421 (D.C.Cir.2007). That case arose from a company’s desire to build and operate a spent nuclear fuel storage facility on land belonging to an Indian tribe. Id. at 422. The company needed a license from the Nuclear Regulatory Commission (NRC), a right-of-way from the Bureau of Land Management (BLM), and a lease from the Bureau of Indian Affairs (BIA). Id. After NRC granted the license, an association of tribal members petitioned for review in this court. Id. at 423. Later BLM and BIA denied the company’s applications for the right-of-way and lease. Id. at 423. We concluded that the petition for review of NRC’s decision was not ripe for adjudication because the “denials of approval by the BLM and BIA appear to block the activity” of which the petitioners complained. Id. at 425. It was possible that the company could successfully petition for review of the BLM and BIA decisions or that the agencies could reverse themselves, thus clearing the way for construction of the facility, but those possibilities were too speculative to render the case ripe for review. Id. at 425-26. We made clear that the “question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the risk.” Id. at 424 (citation omitted).
As in Devia, the effects of the Commission’s action are contingent upon future action by another administrative agency. Though the other agencies in Devia had already denied approval, the court indicated that even “await[ing] uncertain approvals from other agencies” counsels against justiciability. Id. at 426. OMB must evaluate the information collections, and its disapproval would have a direct effect on the backup power rule. Cf. Atl. States Legal Found., 325 F.3d at 285 (“[Bjefore the regulations have any effect, ... New York must act and in acting might alter EPA’s product.”).
As an independent regulatory agency, the Commission does have the power to overrule OMB, see 44 U.S.C. § 3507(f)(1), but that contingency cannot render this case justiciable.[3] Cf. Am. Petroleum Inst. v. EPA, 906 F.2d 729, 740-41 (D.C.Cir.1990). The Commission might take that course and then again it might not. If OMB disapproves and the Commission fails to exercise its authority under § 3507(f)(1), any opinion on the merits would have addressed questions that have become moot. See Devia, 492 F.3d at 426. If the Commission only overrules OMB in part, for instance declining to reinstate one of the exemptions, that would undoubtedly impact our review of whether the rule is arbitrary and capricious. OMB’s action and the Commission’s response are entirely speculative at this point. Something more must happen before the rule’s “effects [are] felt in a concrete way by the challenging parties.” Abbott Labs., 387 U.S. at 148-49, 87 S.Ct. 1507. This case exemplifies “the usually unspoken element of the rationale underlying the ripeness doctrine: If we do not decide it now, we may never need to.” Nat’l Treasury Employees Union, 101 F.3d at 1431.
As to the second prong of the ripeness test, we see little hardship to the parties in not deciding the case now. Petitioners note “the burden of extended uncertainty, as well as the cost of committing resources to compliance or preparation for compliance for an indefinite period of time.” Pet’rs Supp. Br. 13. But “mere uncertainty as to the validity of a legal rul[ing]” does not “constitute[ ] a hardship for purposes of the ripeness analysis.” Nat’l Park Hospitality Ass’n v. Dep’t of *989 the Interior, 538 U.S. 803, 811, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). Petitioners’ concern over preparation costs is more substantial — the Commission partially justified the time-frame for complying with the rule on grounds that the OMB process “giv[es] providers additional time to come into compliance,” suggesting that providers should begin preparing before the rule takes effect. Reconsideration Order, 22 F.C.C. Red at 18,026. Nonetheless, until the rule does take effect, petitioners “are ‘not required to engage in, or to refrain from, any conduct’ during the time the case is held in abeyance.” Devia, 492 F.3d at 427 (quoting Atl. States Legal Found., 325 F.3d at 285). Because petitioners are not required to do anything to comply with the backup power rule while this case is held in abeyance, the delay they cite does not overcome the judiciary’s “theoretical role as the governmental branch of last resort.” Nat’l Treasury Employees Union, 101 F.3d at 1431.
We recognize that parties still must petition for judicial review of the Commission’s final orders within 60 days to preserve their rights, even though the case may be nonjusticiable due to pending OMB review. See 28 U.S.C. § 2344. We are not concerned that the Commission will use this holding to delay unnecessarily judicial review of its rules going forward. An agency has no interest in putting off review in these circumstances; its desire is to have its regulations take effect. And we have long presumed that executive agency officials will discharge their duties in good faith. See Sprint Nextel Corp. v. FCC, 508 F.3d 1129, 1133 (D.C.Cir.2007) (citing United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)).
We will therefore hold this case in abeyance pending OMB’s action.

So ordered.

. The Commission's rules include cellular and paging service providers as CMRS providers. See 47 C.F.R. § 20.9(a).

. The Commission provided exemptions for when compliance with the backup power rule "is precluded by: (1) federal, state, tribal or local law; (2) risk to safety of life or health; or (3) private legal obligation or agreement.” 22 F.C.C. Red at 18,024. For assets falling outside these specific exemptions, a provider can submit an alternative compliance plan that "ensure[s] backup power is available for 100 percent of the area covered by any non-compliant asset.” Id. at 18,025.

. The Commission has not represented that it will exercise this authority.