Opinion for the Court filed by Chief Judge SENTELLE.
Concurring opinion filed by Circuit Judge BROWN.
Concurring opinion filed by Circuit Judge KAVANAUGH.
SENTELLE, Chief Judge:
Three state and local governmental units, along with individual citizens, petition this court for review of and other relief from two “determinations” made by the Department of Energy (“DOE”) and the other respondents: the DOE’s attempt to withdraw the application it submitted to the Nuclear Regulatory Commission (“NRC” or the “Commission”) for a license to construct a permanent nuclear waste repository at Yucca Mountain, Nevada; and the DOE’s apparent decision to abandon development of the Yucca Mountain nuclear waste repository. Because we believe that Petitioners’ two claims are, respectively, not ripe for judicial determination and not justiciable by this court, we dismiss the petitions for lack of jurisdiction.
I.
This case once again brings before this court the federal government’s controversial ongoing attempt to devise a permanent solution to the problems of civilian radioactive waste disposal. See, e.g., Nevada v. DOE, 457 F.3d 78 (D.C.Cir.2006) (challenging the DOE’s Final Environmental Impact Statement and Record of Decision for the Yucca Mountain nuclear waste repository); Nevada v. DOE, 400 F.3d 9 (D.C.Cir.2005) (challenging a DOE order denying Nevada a grant to fund its participation in an NRC proceeding regarding *431 Yucca Mountain); Nuclear Energy Inst., Inc. v. EPA, 373 F.3d 1251 (D.C.Cir.2004) (challenging a congressional joint resolution and the associated federal regulations selecting Yucca Mountain as the site for the federal nuclear repository); Northern States Power Co. v. DOE, 128 F.3d 754 (D.C.Cir.1997) (requesting a writ of mandamus requiring DOE to comply with the Nuclear Waste Policy Act). The present petitioners argue that recent actions taken by the DOE — which at the very least demonstrate the DOE’s desire to abandon development of the Yucca Mountain nuclear waste repository — violate the Nuclear Waste Policy Act (“NWPA”), the National Environmental Policy Act, and the Administrative Procedure Act (“APA”). Three of the petitioners — Aiken County in South Carolina, the State of South Carolina, and the State of Washington — are state or local governments of localities that are home to sites that temporarily store spent nuclear fuel and high-level radioactive waste pending the opening of a federal nuclear waste repository. The remaining petitioners are three private citizens who live and work near one of those sites. Put succinctly, Petitioners believe that if the federal government abandons the Yucca Mountain nuclear repository, the only congressionally-approved site for permanently disposing of the nation’s spent nuclear waste will be lost and the federal government will fail to comply with its statutory responsibility to provide for the permanent disposal of all of the nation’s high-level radioactive waste.
Congress imposed that responsibility upon the federal government in 1983 when it enacted the NWPA, Pub.L. No. 97-425, 96 Stat. 2201 (1983) (codified as amended at 42 U.S.C. §§ 10101-270). Recognizing that “Federal efforts during the past 30 years to devise a permanent solution to the problems of civilian radioactive waste disposal [had] not been adequate,” 42 U.S.C. § 10131(a)(3), Congress passed the NWPA “to establish a schedule for the siting, construction, and operation of repositories” for the disposal of spent nuclear fuel and high-level radioactive waste. 42 U.S.C. § 10131(b)(1). As originally enacted, the NWPA set forth a process by which the DOE would first identify five repositories “determine[d] suitable for site characterization for selection of the first repository site.” 42 U.S.C. § 10132(b)(1)(A). After performing environmental assessments of each of those first five potential sites, the NWPA required the DOE to recommend three of the sites to the President for characterization as candidate sites no later than January 1, 1985. 42 U.S.C. § 10132(b)(1)(B), (E). In 1987, after the DOE had recommended the Yucca Mountain site as well as sites in Washington and Texas to the President, Congress short-circuited the original process and amended the NWPA to designate Yucca Mountain as the only site for possible development as a repository. Congress ordered the DOE to “provide for an orderly phase-out of site specific activities at all candidate sites other than the Yucca Mountain site.” 42 U.S.C. § 10172(a)(1).
After Congress specified Yucca Mountain as the sole potential location for the nation’s nuclear waste repository, the DOE moved on to the site characterization, approval, review, and licensing phase of the process created by the NWPA. See 42 U.S.C. §§ 10133-38. Over the next fifteen years, the DOE performed site characterization activities at Yucca Mountain, and in 2002, the DOE recommended “that Yucca Mountain be developed as the site for an underground repository for spent fuel and other radioactive wastes.” Recommendation by the Secretary of Energy Regarding the Suitability of the Yucca Mountain Site for a Repository Under the Nuclear Waste Policy Act of 1982 at 1 (Feb. 2002). *432 As expressly permitted by the NWPA, the State of Nevada submitted an official objection to the DOE’s recommendation, halting consideration of the Yucca Mountain site. See 42 U.S.C. § 10135(b). Congress overcame this objection by passing a joint resolution “affirmatively and finally approv[ing] the Yucca site for a repository, thus bringing the site-selection process to a conclusion.” Nuclear Energy Inst., 373 F.3d at 1309; see also Pub.L. No. 107-200, 116 Stat. 735 (2002) (codified at 42 U.S.C. § 10135 note).
The NWPA next directed the DOE to “submit to the Commission an application for a construction authorization for a repository at such site.” 42 U.S.C. § 10134(b). Although the NWPA required that the DOE submit this application within ninety days of the site designation becoming effective, id., the DOE did not submit the Yucca Mountain application for another six years. Finally, on June 17, 2008, the DOE submitted the application and the Commission docketed it for review by its Atomic Safety and Licensing Board (“Licensing Board”). See Department of Energy; Notice of Acceptance for Docketing of a License Application for Authority to Construct a Geologic Repository at a Geologic Repository Operations Area at Yucca Mountain, NV, 73 Fed.Reg. 53,284 (Sept. 15, 2008). The NRC’s Licensing Board began its review of the Yucca Mountain application, but on March 3, 2010, the DOE filed a motion to withdraw its application with prejudice. See Dep’t of Energy Motion to Withdraw, In re U.S. Dep’t of Energy (High-Level Waste Repository), Docket No. 63-001, ASLBP No. 09-892-HLW-CAB04 (United States Nuclear Regulatory Commission) (Mar. 3, 2010). In its motion, the DOE stated that although it “reaffirms its obligation to take possession and dispose of the nation’s spent nuclear fuel and high-level nuclear waste, the Secretary of Energy has decided that a geologic repository at Yucca Mountain is not a workable option for long-term disposition of these materials.” Id. at 1. The DOE clarified that it sought to dismiss the application with prejudice “because it does not intend ever to refile an application to construct a permanent geologic repository ... at Yucca Mountain.” Id. at 3 & n. 3.
On June 29, 2010, the NRC Licensing Board denied the DOE’s motion to withdraw. Order of Atomic Safety and Licensing Board, In re U.S. Dep’t of Energy (High-Level Waste Repository), Docket No. 63-001, ASLBP No. 09-892-HLW-CAB04 (United States Nuclear Regulatory Commission) (June 29, 2010). Noting that the DOE conceded that the Yucca Mountain license application was not defective nor the site unsafe, the Licensing Board concluded that the NWPA “does not permit the Secretary [of the DOE] to withdraw the Application that the NWPA mandates the Secretary file.” Id. at 3. In denying the DOE’s motion, the Licensing Board held that “the NWPA does not give the Secretary the discretion to substitute his policy for the one established by Congress in the NWPA that, at this point, mandates progress toward a merits decision by the Nuclear Regulatory Commission on the construction permit.” Id. The next day, the Secretary of the Commission invited all of the participants before the Licensing Board to file briefs as to whether the Commission should review, reverse, or uphold the Licensing Board’s decision to deny the DOE’s motion to withdraw. Order, In re U.S. Dep’t of Energy (High-Level Waste Repository), Docket No. 63-001-HLW (United States Nuclear Regulatory Commission) (June 30, 2010). At this time, both the NRC Licensing Board’s review of the DOE Yucca Mountain license application and the Commission’s review of *433 the Licensing Board’s denial of the DOE’s motion to withdraw are ongoing.
Petitioners identify the DOE’s attempt to withdraw its Yucca Mountain license application from consideration by the NRC Licensing Board as the “determination” they seek to have us review. Petitioners argue that the DOE lacks the legal authority to withdraw its application and that the DOE’s attempt to do so violates the NWPA. Petitioners’ second claim challenges a different “determination:” the DOE’s efforts outside of the NRC licensing context “to irrevocably abandon the Yucca Mountain process and terminate the entire Yucca Mountain project.” Brief of Petitioners at 42. As evidence that the DOE is abandoning the Yucca Mountain site, Petitioners point to an array of DOE actions including announcing on January 29, 2010 that the DOE was abandoning the Yucca Mountain site and creating a Blue Ribbon Commission to find another way of disposing of high level nuclear waste; ■withdrawing its Yucca Mountain water permit applications from the State of Nevada; repurposing funds appropriated by Congress for Yucca Mountain; notifying employees supporting the Yucca Mountain license application that they may be separated; and drafting plans to shut down the Yucca Mountain site. Petitioners argue that the NWPA does not authorize the DOE to take actions to abandon Yucca Mountain, that abandoning Yucca Mountain without preparing an Environmental Impact Statement violates the National Environmental Policy Act, and that the action should be overturned as arbitrary and capricious agency action under the APA.
In response, the DOE both disputes the merits of Petitioners’ claims and argues that this court lacks jurisdiction to hear their petitions. The DOE makes multiple threshold arguments, contending, inter alia, that Petitioners lack standing before this court, that Petitioners’ first claim is unripe for judicial review, that Petitioners fail to state a claim upon which relief can be granted, and that there has been no final agency action which would be reviewable by this court. Any one of these arguments, if correct, would establish that this court lacks the authority to grant relief upon these petitions. Because we agree with the DOE that there is, at least, a lack of finality and ripeness until the Commission either acts on the DOE’s motion to withdraw or rules on the license application, we hold that we lack jurisdiction and therefore cannot address either the merits of the petitions or the remaining threshold issues.
II.
Ripeness is a justiciability doctrine “ ‘drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.’ ” Nat’l Park Hospitality Ass’n v. Dep’t of Interior, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting Reno v. Catholic Soc. Services, Inc., 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)). Prudentially, the basic rationale of the ripeness doctrine “is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.” Abbott Labs. v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). As the Supreme Court has observed, “federal courts may exercise power only ‘in the last resort, and as a necessity.’ ” Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting Chicago & Grand *434 Trunk Railway Co. v. Wellman, 143 U.S. 339, 345, 12 S.Ct. 400, 36 L.Ed. 176 (1892)). We have noted that it is sometimes true that if we do not decide a case prematurely, we may never need to decide it. Nat’l Treasury Employees Union v. United States, 101 F.3d 1423, 1431 (D.C.Cir.1996). Refusing to involve the courts in ongoing administrative matters both protects judicial resources and comports with the judiciary’s role as the governmental branch of last resort. Id. The ripeness doctrine, even in its prudential aspect, is a threshold inquiry that does not involve adjudication on the merits and which may be addressed prior to consideration of other Article III justiciability doctrines. Toca Producers v. FERC, 411 F.3d 262, 265 n. * (D.C.Cir.2005).
When we apply the ripeness doctrine to review of agency actions, “ ‘we balance the interests of the court and the agency in delaying review against the petitioner’s interest in prompt consideration of allegedly unlawful agency action.’” Toca Producers, 411 F.3d at 265 (quoting Fed. Express Corp. v. Mineta, 373 F.3d 112, 118 (D.C.Cir.2004)). “The interests of the court and of the agency in withholding judicial review ordinarily depend upon ‘the fitness of the issues for judicial decision,’ ” id. at 266 (quoting Abbott Labs., 387 U.S. at 149, 87 S.Ct. 1507), which depends, inter alia, on whether the issues are purely legal, whether consideration of the issues would benefit from a more concrete setting, and whether the agency’s actions are sufficiently final. CTIA-The Wireless Ass’n v. FCC, 530 F.3d 984, 987 (D.C.Cir.2008); Atl. States Legal Found., Inc. v. EPA, 325 F.3d 281, 284 (D.C.Cir.2003). “But when an agency decision may never have its effects felt in a concrete way by the challenging parties, the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well.” Devia v. NRC, 492 F.3d 421, 424 (D.C.Cir.2007) (internal citation and quotation marks omitted). “Hence, a ‘claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.’ ” Id. (quoting Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal citation and quotation marks omitted)).
In this case, Petitioners fear that the DOE will withdraw its Yucca Mountain license application, significantly delaying or perhaps permanently preventing the construction of the Yucca Mountain repository. If the Yucca Mountain repository never opens, Petitioners argue, the federal government will never remove the nuclear waste temporarily stored within their jurisdictions or near where they live, despite the federal government’s responsibility for doing so. This fear is not unreasonable, considering that the NWPA ordered the DOE to “terminate all site specific activities (other than reclamation activities) at all candidate sites, other than the Yucca Mountain site.” 42 U.S.C. § 10172(a)(2). But despite the reasonableness of Petitioners’ fears, their petitions are premature.
A.
Petitioners’ first claim challenges the DOE’s attempt to withdraw its Yucca Mountain construction license application from consideration by the Commission. At this stage of the administrative process, however, .the DOE has no say in whether the Yucca Mountain license application will be reviewed and granted. That power lies exclusively with the Secretary of the Commission and the NRC Licensing Board, which already denied the DOE’s motion to withdraw the license application and still has the responsibility and authority to review the merits of the Yucca Mountain *435 application. There are two ongoing NRC administrative procedures — the Commission’s review of the Licensing Board’s denial of the DOE motion to withdraw and the Licensing Board’s review of the Yucca Mountain construction license application — both of which have the potential to moot Petitioners’ first claim entirely.
First, the Commission has not yet decided whether it will review the Licensing Board’s denial of the DOE motion to withdraw. If the Commission declines to review the denial, the DOE will have failed in its attempt to withdraw the Yucca Mountain application and Petitioners’ first claim will be moot. The same outcome will occur if the Commission chooses to review and then upholds the Licensing Board’s denial of the DOE motion. The only way in which Petitioner’s first claim will not become moot is if the Commission chooses to review and then reverses the Licensing Board’s denial.
Second, independent of the Commission’s review of the Licensing Board’s denial order, the NRC Licensing Board’s consideration of the DOE Yucca Mountain license application has not been completed. Although Petitioners point to evidence that the Commission has suspended the Licensing Board’s review, we note that the NWPA requires the Commission to review the application, see 42 U.S.C. § 10134(d) (“The Commission shall consider an application for a construction authorization for all or part of a repository....”), and therefore we must assume that the Commission will comply with its statutory mandate. If the Licensing Board denies the application, consideration of Yucca Mountain as a location for the federal nuclear waste repository will come to an end. Although this outcome will not remedy the harm that Petitioners potentially face— indefinite exposure to the nuclear waste temporarily stored at sites in Washington and South Carolina- — -the Licensing Board’s disapproval of Yucca Mountain on technical and scientific grounds will be a final agency action that Petitioners may challenge under the APA. On the other hand, if the Licensing Board approves the application, the Commission will issue a construction license for Yucca Mountain, which would complete the process mandated in the NWPA and remove the legal basis of Petitioners’ first claim (i.e. the failure of Respondents to comply with the process mandated by Congress).
Between the Commission’s possible review of the denial order and the Licensing Board’s consideration of the Yucca Mountain license application, the only administrative outcome that will fail to resolve the issues presented in Petitioner’s first claim would be if the Commission reviews and overturns the Licensing Board’s denial, permitting the DOE to withdraw its license application. At that point, petitioners would have the opportunity to demonstrate whether the effects of the DOE action are “ ‘felt in a concrete way by the challenging parties.’ ” See Devia, 492 F.3d at 424 (quoting Abbott Labs., 387 U.S. at 148-49, 87 S.Ct. 1507). Petitioners’ first claim, therefore, is not fit for judicial decision because “it rests upon ‘contingent future events that may not occur as anticipated, or indeed may not occur at all.’ ” Id. (quoting Texas v. United States, 523 U.S. at 300, 118 S.Ct. 1257 (internal citations and quotation marks omitted)).
Looking to the other aspect of the prudential ripeness analysis, delaying review of the issues in this case causes little harm to Petitioners’ interest in prompt consideration of allegedly unlawful agency action. As we noted above, the NWPA requires the Commission to “issue a final decision approving or disapproving the issuance of a construction authorization not later than the expiration of 3 *436 years after the date of the submission of such application, except that the Commission may extend such deadline by not more than 12 months” subject to specified reporting requirements. 42 U.S.C. §§ 10134(d)-(e). Without an extension, the three-year statutory deadline for the Commission to issue its final decision on the DOE’s Yucca Mountain application — submitted on June 17, 2008 — has potentially already come and gone.[1] Very soon, the contingencies discussed above should be resolved and Petitioners — and importantly this court — will know whether the Commission will permit the DOE to withdraw the Yucca Mountain license application, and if not, whether the Commission approves or disapproves the application. Should the Commission fail to act within the deadline specified in the NWPA, Petitioners would have a new cause of action under this court’s ruling in Telecommunications Research and Action Center v. FCC, 750 F.2d 70 (D.C.Cir.1984) (hereinafter “TRAC”). In TRAC, we held that the Courts of Appeals have exclusive jurisdiction to issue writs of mandamus to compel agency actions that have been unreasonably delayed. 750 F.2d at 75. Although mandamus is an extraordinary remedy reserved for extraordinary circumstances, “we will interfere with the normal progression of agency proceedings to correct transparent violations of a clear duty to act.” In re Am. Rivers and Idaho Rivers United, 372 F.3d 413, 418 (D.C.Cir.2004) (emphasis added) (internal citations and quotation marks omitted). We do so both to protect our own future jurisdiction over the merits of the dispute and because “[i]t is obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action.” Id. (quoting TRAC, 750 F.2d at 76, 79). We will not permit an agency to insulate itself from judicial review by refusing to act. See, e.g., In re Core Communications, Inc., 531 F.3d 849, 861-62 (D.C.Cir.2008) (granting a writ of mandamus to force the FCC to issue a final appealable order); Radio-Television News Directors Ass’n v. FCC, 229 F.3d 269, 272 (D.C.Cir.2000) (granting a writ of mandamus to vacate an FCC order when the FCC failed to take final action).
Having concluded that Petitioners’ challenge of the DOE’s motion to withdraw is unfit for judicial decision and that Petitioners’ interest in prompt consideration of allegedly unlawful agency action will be only minimally harmed by delay, we further conclude that Petitioners’ first claim is not ripe and is therefore outside of our jurisdiction.
B.
Petitioners’ second claim challenges DOE actions which are simply not reviewable by this court. Petitioners characterize the agency action challenged in their second claim as the “determination made on or about January 29, 2010, by Respondents President Obama, Secretary Chu and DOE to unilaterally and irrevocably terminate the Yucca Mountain repository process mandated by the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270.” Agency actions are reviewable by courts of appeal under the terms of 5 U.S.C. § 704. That section delineates reviewable actions as “[ajgency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.... ” Petitioners have failed to iden *437 tify any agency action coming within that delineation. Otherwise put, petitioners have set forth no discrete action mandated by the NWPA that the DOE has failed to perform or performed inadequately. In 42 U.S.C. § 10134(b), Congress ordered the DOE to “submit to the Commission an application for a construction authorization for a repository.” The DOE completed this task on June 17, 2008, and its application is currently under review by the NRC Licensing Board. Despite the DOE’s publicly stated desire and intention to abandon the Yucca Mountain repository, the DOE has shown us nothing that grants it the authority or ability to stop the NRC Licensing Board from continuing its congressionally-mandated review and has entered no order or official decision inconsistent with its statutory duty. See 42 U.S.C. § 10134(d). Unable to point to any unlawful action by the DOE, Petitioners challenge DOE’s public announcement regarding Yucca Mountain. Neither the NWPA nor the APA authorizes this type of legal attack.
The DOE’s policy announcement, which has no legal consequence, is not a “final decision or action of the Secretary” or a “final agency action” as required by 42 U.S.C. § 10139(a)(1)(A) and 5 U.S.C. § 704. See Bennett v. Spear, 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (holding that “final” agency action must both mark consummation of an agency’s decision making process and either determine rights or obligations or be an action from which legal consequences will flow). Nor, at this stage of the ongoing Yucca Mountain saga, has the DOE failed to make any decision or take any action mandated by the NWPA — as required to give this court jurisdiction under 42 U.S.C. § 10139(a)(1)(B) — or made a decision or taken an action which violates the Constitution — as required to give this court jurisdiction under 42 U.S.C. § 10139(a)(1)(C). Likewise, since the DOE has not taken any action prohibited under the NWPA or failed to take any action required by the NWPA, the DOE’s failure to prepare an environmental impact statement before making its announcement, as would otherwise have been required by 42 U.S.C. § 10139(a)(1)(D), is not yet an official, reviewable decision. Finally, to the extent that Petitioners wish to “compel agency action unlawfully withheld” based on the language of 5 U.S.C. § 706(1), “a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.” Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64,124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (emphasis in original). At least to this date, the DOE has not failed to take any discrete agency action that Congress ordered it to take. Petitioners’ general complaints about the DOE’s new policy regarding Yucca Mountain are simply not justiciable. See Cobell v. Kempthorne, 455 F.3d 301, 307 (D.C.Cir.2006) (“Because an on-going program or policy is not, in itself, a ‘final agency action’ under the APA, our jurisdiction does not extend to reviewing generalized complaints about agency behavior.” (quotation and citation omitted)).
III.
The NWPA set forth a process and schedule for the siting, construction, and operation of a federal repository for the disposal of spent nuclear fuel and high-level radioactive waste. At this point in that process, the DOE has submitted a construction license application for the Yucca Mountain repository and the Commission maintains a statutory duty to review that application. Despite the respondents’ pronouncements and apparent intentions, unless and until Petitioners are able to demonstrate that one of the re *438 spondents has either violated a clear duty to act or otherwise affirmatively violated the law, Petitioners’ challenges to the ongoing administrative process are premature. For the reasons set forth above, we conclude that we lack jurisdiction over Petitioners’ claims. The petitions are dismissed.

. At oral argument, the DOE suggested that the three-year deadline should toll from September 15, 2008, the date when the application was docketed, rather than from when the application was submitted. We offer no opinion on the correctness of that suggestion, but note that in either case, the deadline for the Commission to act is at hand.